**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Moneva Walker,<br>c/o 201 Santa Monica Blvd.,<br>Suite 600<br>Santa Monica CA, 90401<br><br>           Plaintiff,<br><br>v.<br><br>Cedar Fair, L.P.,<br>One Cedar Point Drive<br>Sandusky, OH 44870<br><br>    and<br><br>Cedar Fair Management, Inc.,<br>One Cedar Point Drive<br>Sandusky, OH 44870<br><br>           Defendants. | Case No _____<br><br>Hon _____<br><br>**CLASS ACTION COMPLAINT**<br>**JURY DEMAND**<br><br>Richard M. Kerger (0015864)<br>Kimberly A. Conklin, (0074726)<br>THE KERGER LAW FIRM, LLC<br>4159 N. Holland-Sylvania Rd. Suite 101<br>Toledo, Ohio 43623<br>Telephone: (419) 255-5990<br>Fax: (419) 255-5997<br>Email: rkerger@kergerlaw.com;<br>kconklin@kergerlaw.com<br>Counsel for Plaintiff<br>(additional counsel listed in<br>signature block) |

## Introduction

1. Defendants own and operate 13 amusement parks in the United States and Canada, including Knott's Berry Farm in California, Cedar Point in Ohio, and Schlitterbahn in Texas.

2. Defendants sold 2020 season passes for each park (for example, a 2020 Knott's Berry Farm season pass). Season passes entitled purchasers to "unlimited visits" "all season long" at the relevant park, for the entire 2020 season. The promised 2020 season generally lasted from May to early September. At certain parks, like Knott's Berry Farm, the promised 2020 season lasted all year.

3. Plaintiff and millions of others bought season passes for the 2020 season. But in response to the Covid-19 pandemic, the season was cancelled at many parks and substantially shortened and restricted at the rest. Passholders did not receive what they paid for.

4. Despite not providing the promised 2020 season, Defendants have not refunded pass fees. Plaintiff brings this case on behalf of herself and millions of 2020 passholders like her, seeking fair compensation.

## Parties

### Plaintiff

5. Moneva Walker is a citizen of Washington state (domiciled in Spokane Valley). She purchased a 2020 regular season pass to Knott's Berry Farm (at the time she lived in California). When purchasing a pass, she expected the promised benefits of unlimited visits during the 2020 season (all of 2020). But Knott's Berry Farm closed in mid-March 2020, with no reopening date. Had she known that Defendants would fail to provide pass benefits, she would not have purchased a pass on the terms offered.

### Defendants

6. Defendant Cedar Fair, L.P. is a publicly-traded Delaware Limited Partnership. Its principal place of business and headquarters is at One Cedar Point Drive, Sandusky, Ohio, 44870. Cedar Fair, L.P. owns 13 amusement parks in the U.S. and Canada. The locations of the parks are shown below:



Cedar Fair parks

7. Defendant Cedar Fair Management, Inc. is an Ohio corporation. Cedar Fair Management, Inc. is the General Partner of Cedar Point, L.P. On information and belief, its principal place of business and headquarters is at One Cedar Point Drive, Sandusky, Ohio 44870.

**Jurisdiction and Venue**

8. This Court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A) & (B). This matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which: (A) any member of the class of plaintiffs is a citizen of a state different from any defendant; and (B) any member of the class of plaintiffs is a citizen of a foreign state and any defendant is a citizen of a state.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendants reside in this District. In addition, a substantial part of Defendants' conduct giving rise to the claims occurred in this District.

## Facts

10. For the 2020 season, Defendants offered season park passes for sale to the general public. For example, Defendants offered season passes on the website for each Cedar Fair park.

11. Defendants' season passes came in three tiers: regular (also called silver), gold, and platinum. All tiers offered the same core benefit: unlimited visits to the relevant park, throughout the entire 2020 season. Gold and platinum passes included add-on benefits like access to special events, free parking, and admission at other Cedar Fair parks. [1]

12. The essential terms of each offer, including the core benefits and price for each pass, were prominently displayed on the website for each park, including on the "Tickets" page. For example:

---

[1] Certain parks offered just two tiers, for example Gold and Platinum.






https://www.knotts.com/tickets-passes/season-passes
(web archive for December 31, 2019)



https://www.cedarpoint.com/tickets-passes/season-passes
(web archive for November 16, 2019)

6



https://www.cagreatamerica.com/tickets-passes/season-passes
(web archive for August 25, 2019)

13. While prices varied by park, regular (or silver) passes were generally $60-$100, gold passes were generally $80-$120, and platinum passes around $200.

7

14. In exchange for paying this amount, purchasers would receive the core benefit: "unlimited visits" "all season long" (i.e., visit "as many times as you want all season") for the promised year (2020). In addition, purchasers would receive secondary benefits (depending on pass tier) like parking and access to special events.

15. When a customer selected and paid for a pass, this constituted acceptance of the offer and formed a contract between that purchaser and Defendants. Each class member selected and paid for a 2020 season pass and thus formed a contract with Defendants.

16. Defendant Cedar Point, L.P. is a party to the contract with each class member. As a General Partner, Cedar Point Management, Inc. is also liable under the contract.

17. In addition to the promises made on park websites, Defendants made similar promises in other season pass marketing materials and advertisements.

18. According to the Cedar Fair, L.P. 2019 10-K, its parks "are generally open during weekends beginning in April or May, and then daily from Memorial Day until Labor Day." In other words, the parks have an approximately "130-to 140-day operating season." Knott's Berry Farm is open year-round.

19. In response to the Covid-19 pandemic, the promised 2020 park season was either cancelled entirely or substantially shortened and restricted. For example, the season was cancelled entirely at Canada's Wonderland, California's Great Adventure, and King's Dominion. As a further example, the season was shortened and restricted at Cedar Point and King's Island, which opened in July and restricted the number of daily reservations that could be made. At Knott's Berry Farm, the season was cancelled in mid-March, with no re-opening date.

20. As a result, season passholders did not receive the unlimited 2020 park visits that they purchased.

8

21. When Defendants closed their parks for the 2020 season, Defendants did not provide refunds to class members. Instead, Defendants kept all of passholders' money. Although Defendants announced that the access provided by 2020 season passes would be "extended through the 2021 Season," this is not what passholders paid for and was contrary to the essential terms of the contract.

22. In sum, Defendants did not provide passholders with what they paid for: unlimited park visits for the 2020 season. But Defendants have not returned the money passholders paid for that unfulfilled promise.

### Class Action Allegations

**The proposed class.**

23. Plaintiff brings this action on behalf of the proposed class of: all individuals who purchased a 2020 season pass to a Cedar Fair park.

24. It is appropriate to include passholders from all Cedar Fair parks in the same class. All groups formed a substantially similar contract with Defendants. The core benefits of the purchased passes were substantially the same: unlimited visits to the park throughout the season. All passholders allege the same breach, and related claims. All passholders seek the same type of relief: compensation for not getting the pass benefits they paid for. There are no conflicts of interest between these groups. For similar reasons, it is also appropriate to include all tiers of passes (regular, gold, and platinum) in the same class. The pass contracts, core pass benefits, and harm are substantially the same.

25. The following people are excluded from the class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current employees, officers and directors; (3)

9

persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

26. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of 2020 passholders.

**Commonality.**

27. There are questions of law and fact common to the proposed class. Common questions of law and fact include, for example:

    i. The terms of the contract formed between the class and Defendants;

    ii. Whether Defendants breached by failing to provide unlimited park access for the complete 2020 season and refusing to refund pass fees;

    iii. Damages needed to reasonably compensate pass holders; and

    iv. Whether Defendants were unjustly enriched by keeping all pass fees.

**Typicality.**

28. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased a pass to a Cedar Fair park for the 2020 season. Like the proposed class, Plaintiff did not receive the promised unlimited park visits. And as explained above, purchasers of passes to other Cedar Fair parks, or other pass tiers, entered into substantially similar contracts with Defendants. Plaintiff alleges the same breach, and other claims, as the proposed class. Plaintiff seeks the same type of relief: fair compensation for Defendants' failure to provide pass benefits.

**Adequacy.**

29. Plaintiff will fairly and adequately protect the interests of the proposed class. Plaintiff's interests are aligned with the interests of the proposed class members: Plaintiff seeks reasonable compensation for Defendants' breach and other alleged wrongs. Plaintiff is represented by experienced class counsel who are prepared to vigorously litigate this case through judgment and appeal. There are no conflicts of interest between Plaintiff and the class.

**Predominance and Superiority.**

30. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same contract is found for some proposed class members, but not others.

31. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be

11

determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendants breached their contract with passholders by failing to provide unlimited park visits throughout the entire season.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

33. The proposed class is readily ascertainable. The precise number and identity of proposed class members can be determined with specificity from Defendants' records.

## Claims

### Count 1
### Breach of Contract

34. Plaintiff alleges this claim individually and on behalf of the proposed class (collectively "Plaintiffs" as used in this claim).

35. Plaintiffs incorporate the facts alleged above.

36. A valid contract existed between each class member and Defendants. The contracts, as alleged above, entitled Plaintiffs to unlimited park visits for the entire 2020 season (among other benefits).

37. Plaintiffs paid their pass fees and performed all their contractual obligations.

38. Defendants materially breached by failing to provide Plaintiffs with access to Cedar Fair parks for the entire 2020 season, or a substantial portion of it. This deprived Plaintiffs of the benefit of the bargain.

39. Plaintiffs allege in the alternative that, to the extent that the contract gave Defendants any discretion in deciding whether to return pass fees, Defendants failed to exercise

that discretion in good faith and therefore breached the implied duty of good faith and fair dealing.

40. Defendants have not returned any pass fees to Plaintiffs.

41. Defendants' breach was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

42. Plaintiffs are entitled to damages under the contact. In the alternative, Plaintiffs are entitled to rescission and restitution.

### Count 2
### Unjust enrichment

43. Plaintiff alleges this claim individually and on behalf of the proposed class (collectively "Plaintiffs" as used in this claim).

44. Plaintiffs incorporate the facts alleged above.

45. By collecting pass fees, Defendants received (and knowingly and willingly accepted) a direct benefit at Plaintiffs' expense.

46. It would be unjust for Defendants to retain all pass fees, when Defendants failed to provide unlimited park visits for the entire season.

47. Defendants' unjust conduct was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

### Count 3
### Money had and received

48. Plaintiff alleges this claim individually and on behalf of the proposed class (collectively "Plaintiffs" as used in this claim).

49. Plaintiffs incorporate by reference the facts alleged above.

50. Defendants received pass fees from Plaintiffs, in exchange for unlimited park access, for the entire season.

51. Plaintiffs' pass fees were intended to be used to benefit Plaintiffs by exchanging these fees for unlimited park access.

52. When parks closed early, retained pass fees were no longer used to benefit Plaintiffs and were not returned.

53. Equity and good conscience require Defendants to return pass fees proportionate to lost pass benefits and value.

54. Defendants have refused to return any pass fees.

55. Defendants' wrongful retainment of pass fees was the proximate cause, and a substantial factor, in causing losses and damages to Plaintiffs.

## Jury Demand

Plaintiffs demand a jury trial on all issues so triable.

## Prayer for Relief

Plaintiffs seek the following relief for themselves and for the proposed class:

a) An order certifying the asserted claims, or issues raised, as a class action;

b) A judgment in favor of Plaintiff and the proposed class;

c) Damages;

d) Restitution;

e) Rescission;

f) Disgorgement, and other just equitable relief;

g) Pre- and post-judgment interest;

h) Any additional relief that the Court deems reasonable and just.

September 25, 2020

*/s/ Richard M. Kerger*

Richard M. Kerger (0015864)
Kimberly A. Conklin, (0074726)
The Kerger Law Firm, LLC
4159 N. Holland-Sylvania Rd. Suite 102
Toledo, Ohio 43623
Telephone: (419) 255-5990
Fax: (419) 255-5997
rkerger@kergerlaw.com;
kconklin@kergerlaw.com

Jonas Jacobson
(*pro hac vice* to be submitted)
Simon Franzini
(*pro hac vice* to be submitted)
Dovel & Luner LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Fax: 310-656-7069
jonas@dovel.com
simon@dovel.com
Counsel for Plaintiffs