# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Moneva Walker, et al.                                          Case No. 3:21cv2176

        Plaintiffs,

        v.                                          **ORDER**

Cedar Fair, L.P., et al.,

        Defendants.

Plaintiffs filed this case as a class action, seeking recompense for themselves and other similarly situated persons unable to use their 2020 season passes at defendant Cedar Fair, L.P.'s various amusement parks during the period when Cedar Fair closed its parks due to the Covid-19 pandemic.

Pending is defendants' Motion to Dismiss Plaintiffs' Ohio Consumer Sales Practices Act claim. (Doc. 30). For the reasons set out below, I deny that motion.

## Background

Cedar Fair operates thirteen amusement parks in the United States and Canada. (Doc. 18, ¶ 1). Its parks sell season passes that they advertise on their websites as providing unlimited visits and certain other prequisites depending on the pass level that consumers purchased. (*Id.*, ¶¶ 15-19).

Due to the rise of the Covid-19 pandemic, Cedar Fair did not open its parks at their usual opening dates in 2020. California's Great America, Valleyfair, and Canada's Wonderland never opened. King's Dominion and Carowinds were closed for the vast majority of the season,

opening only for a brief "Taste of the Season" event in November and December. Defendants closed all remaining parks for a substantial portion of the season (and imposed heavy restrictions when a park was open, *e.g.*, reservation requirements, and substantially restricted ride and attraction access). (*Id.*, ¶ 43).

At the time Cedar Fair sold the season passes, it posted the expected dates of the open seasons for each park. (*Id.*, ¶ 23). The parks are generally open during weekends beginning in April or May, and then daily from Memorial Day until Labor Day. In other words, the parks have an approximately 130 to 140-day operating season. (*Id.*, ¶ 37). Plaintiffs allege that Cedar Fair refused to provide them with a refund for the portion of the regularly-scheduled year that its parks remained closed. (*Id.*, ¶ 44).

Plaintiffs' claim that Cedar Fair violated Ohio's Consumer Sales Practices Act, O.R.C. § 1345.01 et seq ("OCSPA"), through misrepresentations and omissions. Plaintiffs allege that Cedar Fair made the following misrepresentations on its websites:

- That the passholders would have unlimited access for all of the 2020 season, (*id.*, ¶ 19); and

- That its parks would have an operating season lasting 130-140 days, beginning in April or May. (*Id.*, ¶ 37).

Plaintiffs allege that the parks failed to disclose on their websites that if an unexpected event or *force majeure* forced them to close for a substantial portion of the year, the parks would not return any of the season-pass holders' purchase price. (*Id.*, ¶ 156).

Plaintiffs allege that, based on those misrepresentations and omission, a reasonable consumer would believe that if Cedar Fair closed its parks for all or a substantial portion of the season, it would return a proportionate amount of the passes' purchase price for the time the

parks remained closed. (*Id.*, ¶ 156). They contend that Cedar Fair's conduct, in making its representations and omission was deceptive and unfair in violation of O.R.C. § 1345.02, (Doc. 18, ¶¶ 160-62), and unconscionable in violation of O.R.C. § 1345.03, (Doc. 18, ¶¶ 164-65).

In response, Cedar Fair argues that a reasonable consumer would not believe that it would return a proportionate portion of the pass purchase price based on the following disclaimers on its parks' websites and/or on the passes themselves:

- I agree that all ticket sales are final. There are no refunds or exchanges.

- ALL SALES ARE FINAL – NO REFUNDS, NO TRANSFERS OR EXCHANGES, NO RAIN CHECKS, NOT VALID FOR CASH.

- All operating dates and hours are subject to change without notice.

- All rides and attractions are subject to closings and cancellations for weather or other conditions.

- Operating dates are subject to change without notice.

- All attractions are subject to closing and cancellations for weather or other conditions.

(Doc. 32, pgID 507-09).

Cedar Fair argues that it could not have foreseen Covid. It further argues that plaintiffs' version of what a reasonable consumer would have believed is unreasonable based on: 1) those disclaimers; 2) the allegation that the passes did not form a contract but merely provided a license; and 3) the relative prices of season passes and individual day tickets. It also contends that the plaintiffs' OCSPA claim is merely a repackaged contract claim, and that a breach of contract does not violate the OCSPA.

Cedar Fair also argues that even if I were to find plaintiffs have pled adequately that its conduct was deceptive, it fits the statutory defense "that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section." (Doc. 30, pgID 390-91 (quoting O.R.C. § 1345.02(B)(5)).

**Procedural History**

Before plaintiffs filed this action on September 25, 2020, they had filed a similar action in the Erie County, Ohio Court of Common Pleas. *Valentine v. Cedar Fair, L.P.*, No 2020CV0172, 2020 WL 11193416 (Erie Cnty. Ct. Comm. Pl.). In that case, they asserted their contract and quasi-contract claims on behalf of the putative class. They did not assert an OCSPA claim.

On September 11, 2020, the trial court in *Valentine* dismissed plaintiffs' complaint. *Id.* It held that plaintiffs' purchase of season passes did not create a contract between the parties but, instead, created only a license, revocable at any time without compensation. *Id.* at *2-3. It further held that:

> Based on the clear language of the 2020 Season Pass Terms, Cedar Fair was permitted to modify the operating dates of Cedar Point Amusement Park during its 2020 Season. Therefore, Cedar Fair did not violate the 2020 Season Pass Terms by altering the operating dates and hours of Cedar Point Amusement Park due to the COVID-19 pandemic.

*Id.* at *3.

It also took judicial notice of the fact Cedar Fair opened its Erie County, Ohio park – Cedar Point - on July 9, 2020. It held that, therefore, the plaintiffs' allegation that they were denied the benefit of their bargain was inaccurate because the park did open for a portion of the season. *Id.* at *5.

4

The Ohio Sixth District Court of Appeals reversed that decision. *Valentine v. Cedar Fair L.P.*, 174 N.E.3d 900 (Ohio Ct. App. 2021). It reasoned that "the case law . . . demonstrates that the creation of a revocable license may give rise to a contractual relationship." *Id.* at 907.

Having determined that the passes formed a contract on the terms stated on Cedar Fair's website, the court went on to examine the terms of that contract. It noted that Cedar Fair contracted to allow pass holders access to its park "on any regularly-scheduled operating day of the season" and allowed Cedar Fair to change the park's "operating dates and hours." *Id.* at 909-10. It held that the contract's use of the term "season" is ambiguous and therefore, reversed and remanded the case. *Id.* at 909-10, 911. Cedar Fair has appealed that decision to the Ohio Supreme Court, which has accepted the appeal for review. *Valentine v. Cedar Fair, L.P.*, 175 N.E.3d 1286 (Ohio 2021).

Plaintiffs' currently-operative Second Amended Complaint, (Doc. 18), pled the following causes of action: 1) breach of contract; 2) unjust enrichment; 3) money had and received; and 4) claims under state-law consumer protection statutes in California, North Carolina, Virginia, Missouri, and Ohio.

Cedar Fair filed a motion seeking to enforce the contract's Ohio choice of law provision. (Doc. 19). After the parties had briefed the issue fully, plaintiffs changed course and filed a statement that they no longer contested Cedar Fair's motion and agreed that Ohio law governs this action. (Doc. 27, pgID 279). Accordingly, they withdrew all their consumer protection claims that they had asserted under other states' law. (*Id.*).

At the time plaintiffs filed this case, the trial court had dismissed *Valentine*, and the case was on appeal. In light of the fact that the same contract-related claims raised here were already pending before the Ohio Court of Appeals, Cedar Fair filed a Motion to Stay this case pending a

final decision in the Erie County case. (Doc. 14). In a November 23, 2020 order, I granted that motion as to plaintiffs' contract claims. (Doc. 17). However, because the *Valentine* plaintiffs had not asserted a consumer protection claim, I denied the motion as to that claim. (*Id.*).

Thus, the OCSPA claim is the only presently active claim in this case. In the instant motion, Cedar Fair seeks to dismiss that claim.

### Rule 12(b)(6) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

When considering a Rule 12(b)(6) motion, I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra*, 550 U.S. at 555.

### Discussion

I first address plaintiffs' claim that Cedar Fair's representations and omission were deceptive and unfair in violation of O.R.C. § 1345.02.

### 1.  O.R.C. § 1345.02 Legal Standard

O.R.C. § 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Courts determine whether an action or representation is deceptive by examining it "from the consumer's standpoint." *Doe v. SexSearch.com*, 551 F.3d 412, 418 (6th Cir. 2008) (citing *Chesnut v. Progressive Cas. Ins. Co.*, 850 N.E.2d 751, 757 (Ohio Ct. App. 2006)).

It is not necessary for a defendant to have intended to mislead the consumer or to have knowledge that the representation would induce a false belief in a consumer to be liable under § 1345.02. *Stalvey v. NVR, Inc.*, No. 1:10 CV 1729, 2012 WL 78159, at *5 (N.D. Ohio) (Oliver, J.); *Gallagher v. WMK Inc.*, No. 23564, 2007 WL 4322531, at *7 (Ohio Ct. App.) (citing *Fletcher v. Don Foss of Cleveland, Inc.*, 628 N.E.2d 60, 62 (Ohio Ct. App. 1993)). "Thus, if the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive.'" *Teeters Constr. v. Dort*, 869 N.E.2d 756, 767 (Franklin Cnty. Mun. Ct. 2006) (quoting *Karst v. Goldberg*, 623 N.E.2d 1348, 1359 (Ohio Ct. App.1993)).

In determining whether a representation would induce such a belief in a consumer, courts apply a reasonableness standard. *Shumaker v. Hamilton Chevrolet, Inc.*, 920 N.E.2d 1023, 1031 (Ohio Ct. App. 2009). Thus, "[w]hether an act or practice is unfair or deceptive 'is an issue of fact to be decided from all the relevant facts and circumstances in the particular case.'" *Stalvey, supra*, 2012 WL 78159, at * 5 (quoting *Mannix v. DCB Serv., Inc.*, 2004 WL 2848921 at *3 (Ohio Ct. App.); *accord Wall v. Planet Ford, Inc.*, 825 N.E.2d 686, 691–92 (Ohio Ct. App. 2005).

OCSPA "is a remedial act that courts must liberally construe in favor of the consumer." *Richards v. Beechmont Volvo*, 711 N.E.2d 1088, 1090 (Ohio Ct. App. 1998) (citing *Einhorn v.*

*Ford Motor Co.*, 548 N.E.2d 933 (Ohio 1990)). "One of its purposes is to make 'private enforcement of the CSPA attractive to consumers who otherwise might not be able to afford or justify the cost of prosecuting an alleged CSPA violation, which, in turn, works to discourage CSPA violations in the first place via the threat of liability for damages and attorney fees.'" *Whitaker v. M.T. Auto., Inc.*, 855 N.E.2d 825, 829-30 (Ohio 2006) (quoting *Parker v. I&F Insulation Co.*, 730 N.E.2d 972, 979 (Ohio 2000)).

### 2.  Cedar Fair's Arguments

#### A.  Cedar Fair Could Not Have Foreseen Covid

Cedar Fair devotes considerable effort to arguing that it could not have foreseen the Covid-19 pandemic. *See, e.g.*, (Doc. 30, pgID 375) (Section II(B) titled "the Soothsayer Defendants"). Plaintiffs, however, do not allege that Cedar Fair did or could have foreseen the pandemic. Under the legal standards discussed above, unforseeablility is no defense to a § 1345.02 claim. OCSPA liability does not depend on the seller's knowledge or intent.

The question before me is simply whether Cedar Fair's advertising would have led a reasonable consumer to believe that, if Cedar Fair failed to provide a substantial portion of the unlimited visits that it had promised, it would return a proportionate share of the passes' purchase price. *See, Teeters, supra*, 869 N.E.2d at 767. Thus, any defense to plaintiffs' § 1345.02 claim based on Cedar Fair's knowledge or intent is meritless.

#### B.  Season Pass vs. Season Ticket

Cedar Fair argues that plaintiffs could not reasonably have expected the return of any of their purchase price because what it sold them was a season pass and not a season ticket. (Doc. 32, pgID 502-04). It argues that a season pass is not like season tickets to a sporting event. Season tickets, it argues, provide the ability to attend particular events on particular days while a

8

season pass provides the opportunity to gain admission as many times as the purchaser wants within a single season.

That argument misses the distinction between contract law and OCSPA. The issue is not whether the law would define season passes as revocable licenses, but how a reasonable consumer would understand Cedar Fair's advertisements.

Plaintiffs allege that a reasonable consumer would have understood that if Cedar Fair was unable to provide access for all or a substantial portion of the season, it would refund a proportional amount of the passes' purchase price. Cedar Fair cannot establish as a matter of law that ordinary consumers would understand the legal distinction on which it seeks to rely. "Reasonableness is *generally* a question of fact to be resolved by the trier of fact." *Coleman v. Kindercare Learning Ctr., Inc.*,  No. 99AP–259, 1999 WL 1267321, at *3 (Ohio Ct. App.); *see also Wood v. Dorcas*, 757 N.E.2d 17, 23 (Ohio Ct. App. 2001) ("[W]hat constitutes 'reasonableness' is ordinarily a question of fact."). Whether a reasonable consumer would have understood the difference between season tickets and season passes presents a factual question that I cannot properly resolve on a motion to dismiss.

### C.  Plaintiffs' OCSPA Claim Is Merely a Repackaged Contract Claim

Cedar Fair argues that plaintiffs' OCSPA claim is "nothing more than a repackaging" of its contract claims and that a breach of contract does not violate that statute. (Doc. 30, pgID 372, 373-75). Its argument misunderstands the distinction between OCSPA claims and contract claims.

"OCSPA claims essentially arise from contractual relationships, . . ." *Averback v. Montrose Ford, Inc.*, 120 N.E.3d 125, 137 (Ohio Ct. App. 2019). OCSPA is "designed to compensate for incomplete remedies available at common law, . . ." *Ndoye v. Major*

*Performance LLC*, No. 1:15-CV-380, 2016 WL 4059175, at \*7 (S.D. Ohio) (quoting *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997, 1000 (Ohio 2013)). "Courts recognize that breaches of contract or warranty can constitute violations of the Consumer Sales Practices Act." *Tsirikos-Karapanos v. Ford Motor Co.*, 99 N.E.3d 1203, 1215 (Ohio Ct. App. 2017).

However, to violate OCSPA, "the act need not rise to the level of fraud, negligence, *or breach of contract*." *Mannix, supra*, 2004 WL 2849821, at \*3 (emphasis added); *accord Hacker v. Nat'l Coll. of Bus. & Tech.*, 927 N.E.2d 38, 44 (Ohio Ct. App. 2010). As the court in *Wall, supra*, 825 N.E.2d at 692, explained, contract-based defenses are irrelevant to an OCSPA claim:

> Waiver, ratification, and other common law defenses do not apply to a claim under a law such as the Ohio Consumer Sales Practices Act because the claim is based not on the contract, but on oral or other misrepresentations. For the same reason, the statute of frauds, the parol evidence rule, contractual limitations on liability, and contractual limitations on remedies do not apply.

Thus, Cedar Fair's argument that plaintiffs' OCSPA claim fails because it is closely related to their contract claims is meritless.

### D.  Cedar Fair's Pricing Argument

Cedar Fair contends that the plaintiffs' alleged understanding of what would happen if it closed its parks for all or a substantial portion of a season was unreasonable because of the relative pricing of season passes and single day tickets. It asserts, relying on an article in the Toledo Blade, that a 2020 season pass for its Cedar Point park cost less than two daily passes. (Doc. 30, pgID 388; Doc. 30-4, pgID 456-459). It contends that I may take judicial notice of those prices.

For a court to take judicial notice of a fact, it "must be one not subject to reasonable dispute," a requirement satisfied if the fact is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned." *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 (6th Cir. 2005).

"As the language of [Fed. R. Evid.] 201 makes clear, whether or not to take judicial notice of a fact falls within the court's discretion**.**" *Berk v. Mohr*, No. 2:10-CV-1082, 2012 WL 3780313, at *10 (S.D. Ohio) (citing *United States v. Husein*, 478 F.3d 318, 337 (6th Cir. 2007)), *report and recommendation adopted sub nom. Berk v. Moore*, No. 2:10-CV-1082, 2012 WL 3780303 (S.D. Ohio). Additionally, judicial notice is limited. "[A] court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'" *Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014)).

Here, whether I exercise my discretion to take notice of the news article is not dispositive. The article simply does not provide enough information to establish the factual basis for Cedar Fair's argument.

Most importantly, it only addresses a single one of Cedar Fair's thirteen parks. (Doc. 30-4). Plaintiffs seek to represent a class of season passholders at *any of Cedar Fair's parks*. The article does not establish the relative pricing structure for twelve of those thirteen parks. In addition, it is a 2018 article regarding 2019 pricing at Cedar Point. It does not establish even Cedar Point's pricing for 2020, let alone that of the remaining twelve Cedar Fair parks.

The article simply is inadequate to establish as a matter of law that plaintiffs' understanding of Cedar Fair's advertisements was not reasonable.

### E.  Substitution of Equal or Greater Value

11

Section 1345.02(B)(5) lists the following among its non-exhaustive examples of deceptive representations:

> That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, *except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section.*

(emphasis added).

Cedar Fair argues that it cannot be liable under O.R.C. § 1345.02 because, by honoring the 2020 passes through the 2021 season, it provided a substitute of equal or greater value.

Plaintiffs respond that whether Cedar Fair's substitution of 2021 passes for 2020 passes was of equal or greater value is a question of fact that cannot be resolved at this stage of this case. I agree.

The Second Amended Complaint acknowledges that Cedar Fair offered to extend the 2020 passes through 2021. (Doc. 18, ¶ 50). Plaintiffs argue that the 2021 season was not of equal or greater value because of Covid-related restrictions.

For example, they cite to a page from Cedar Point's website entitled "Cedar Point Reopening Protocols." (Doc. 31, pgID 478 & n.9) (citing Doc. 31-1). That 2021web page reflects that when Cedar Point reopened for 2021, it imposed significant Covid-related limitations and restrictions. (Doc. 31-1, pgID 487-88). It limited the park's capacity and required all patrons, whether season pass holders or not, to make reservations in advance. It also required masking and social distancing. (*Id.*). Moreover, Covid continued to pose a significant risk during the 2021 season. (Doc. 31, pgID 478).

At this early stage in this case, I have no information regarding the extent to which those requirements may have reduced the value of the 2021 season passes from the passes plaintiffs believed they were purchasing for 2020, before the Covid pandemic took hold. For example, I

12

have no information on how the 2021 season's limited access and requirement for advance registration may have restricted their ability to access the park the unlimited number of times that Cedar Fair had promised to them. The webpage reflects that the 2020 season passholders would have to compete with single-day ticket holders for whatever reservations might have been available on a particular day.

Moreover, the website is for the Cedar Point park only. Therefore, it remains unknown what limitations Cedar Fair may have imposed at its other parks.

These factual questions regarding whether the 2021 season passes constituted equal or greater value than the passes the plaintiffs believed they were purchasing cannot be answered as a matter of law. Thus, at this stage in the proceeding, I cannot say as a matter of law that Cedar Fair is entitled to the statutory defense that it provided a substitution of equal or greater value.

### F.   Whether Plaintiffs' Alleged Understanding Was Reasonable

Cedar Fair contends that plaintiffs' alleged understanding that, if it closed its parks for all or a substantial part of a season, it would provide a proportionate refund of the purchase price, was unreasonable in light of the disclaimers stated on its websites. As discussed above, it relies on the following statements:

- I agree that all ticket sales are final. There are no refunds or exchanges.

-  ALL SALES ARE FINAL – NO REFUNDS, NO TRANSFERS OR EXCHANGES, NO RAIN CHECKS, NOT VALID FOR CASH.

-  All operating dates and hours are subject to change without notice.

-  All rides and attractions are subject to closings and cancellations for weather or other conditions.

- Operating dates are subject to change without notice.

13

- All attractions are subject to closing and cancellations for weather or other conditions.

(Doc. 32, pgID 507-09).

I disagree that these disclaimers were sufficiently clear regarding what rights plaintiffs would have in the case of a closure for all or a substantial part of the season. The passholders could reasonably have understood the statements that all sales were final and no refunds or exchanges to mean that they could not obtain a refund or make an exchange if *they desired* to do so. They would not understand that language to entitle Cedar Fair to keep their entire purchase price even if it failed to open its parks for all or a substantial portion of the season.[1]

Similarly, the statements that operating dates are subject to change and that Cedar Fair could close rides for weather or other conditions do not clearly address the situation where Cedar Fair failed to open its parks for all or a substantial portion of their seasons, regardless of the reason. The question here is whether the plaintiffs' alleged understanding of those terms was reasonable. Whatever the Ohio courts may determine those disclaimers mean for contract-law purposes is all but irrelevant to plaintiffs' OCSPA claim. I cannot find as a matter of law that a reasonable consumer would have understood that those disclaimers applied to these circumstances.

I conclude that, for this stage in the proceeding, plaintiffs have adequately pled that a reasonable purchaser might not have understood the disclaimers to mean that Cedar Fair would not provide any compensation if it closed its parks for all or a substantial part of the season.

### 3.  Whether Plaintiffs Have Adequately Pled a § 1345.02 Claim

---

[1] Notably, plaintiffs allege that three of Cedar Fair's parks never opened in 2020. (Doc. 18, ¶ 43). Two other parks allegedly opened only for short period in November and December, while the remaining parks remained closed for a substantial portion of the season. (*Id.*).

Cedar Fair describes plaintiffs' complaint as "bare bones." (Doc. 30, pgID 377, 388). I disagree.

To state a § 1345.02 claim, plaintiffs need only plead facts that plausibly could show that Cedar Fair's advertisements, regardless of its intent, had "the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, . . . '" *Teeters, supra*, 869 N.E.2d at 767.

Here, plaintiffs have adequately pled Cedar Fair's websites' terms, which promised unlimited access during the 2020 season on any regularly scheduled open day. (Doc. 18, ¶¶ 17, 22, 38. They have pled that Cedar Fair had posted the predicted open dates for the 2020 season on the parks' websites, which called for an approximately 130 to 140-day operating season. (*Id.*, ¶¶ 23, 37). They have pled that Cedar Fair did not open some of its parks at all during the 2020 season, while others remained closed for a substantial portion of 2020. (*Id.* ¶ 43). And they have pled that Cedar Fair refused to return any portion of the passes' purchase price to make up for the expected open days the passholders could not access the parks due to Covid. (*Id.*, ¶¶ 2, 44).

Plaintiffs have alleged that a reasonable consumer would have understood the promise of unlimited visits for an approximately 130 to 140-day season to mean that if Cedar Fair failed to provide any or a substantial part of that promise, it would return a corresponding part of the fees. (*Id.*, ¶ 156). And, they have alleged that Cedar Fair "misleadingly omitted or concealed that [it] would not return any pass fees even if [it] did not provide the promised benefits" of unlimited access during an approximately 130 to 140-day season. (*Id.*, ¶¶ 37, 156).

As discussed in Section 2(F), *supra*, the disclaimers on Cedar Fair's websites did not clearly address what would happen in the event it did not open its parks for all or a substantial part of the 2020 season. The information the websites presented about the starting dates and

15

length of a season was that passes would provide unlimited access for the advertised length of the 2020 season. While the websites also stated that Cedar Fair could change its posted open dates and hours, I cannot find that disclaimer would have made clear to a reasonable consumer that it could cancel all or a substantial portion of the season without providing compensation.

Therefore, plaintiffs have pled plausibly that Cedar Fair's websites had "the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, . . . '" *Teeters, supra*, 869 N.E.2d at 767.

Accordingly, plaintiffs have stated a viable claim that Cedar Fair violated § 1345.02.

### 4.  Whether Plaintiffs Have Pled a § 1345.03 Claim Adequately

Plaintiffs also allege that Cedar Fair's conduct violated O.R.C. § 1345.03(A), which provides: "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction." Section 1345.03(B) provides a non-exclusive list of "circumstances [that] shall be taken into consideration" in determining unconscionability, including:

> Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;
>
> . . .
>
> Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
>
> . . .
>
> Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;
>
> Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment;

16

O.R.C. § 1345.03(B)(1), (3), (5), (6).

The statutory term "unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Tsirikos-Karapanos, supra*, 99 N.E.3d at 1215 (internal quotation marks omitted) (quoting *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 800 (Ohio 2005)). "In order to determine whether or not a contract provision is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Jamison v. LDA Builders, Inc.*, No. 2011-P-0072, 2013 WL 2152748, at *8 (Ohio Ct. App.) (quoting *Porpora v. Gatliff Bldg. Co.*, 828 N.E.2d 1081, 1084-85 (Ohio Ct. App. 2005)).

"In order to recover under R.C. 1345.03, a consumer must show that a supplier acted unconscionably and knowingly." *Karst, supra*, 623 N.E.2d at 1351. The consumer must "show the seller was actually aware he was committing an unconscionable act or at least establish some fact upon which such awareness could be inferred." *Shank v. Charger, Inc.*, 929 N.E.2d 520, 528 (Ohio Ct. App. 2010) (quoting *Bierlein v. Bernie's Motor Sales, Inc.*, No. 9590, 1986 WL 6757, at *6 (Ohio Ct. App.)). O.R.C. § 1345.01(E) provides that knowledge "may be inferred where objective manifestations indicate that the individual involved acted with such awareness."

"[C]ourts shall apply a reasonableness standard in determining whether an act amounts to deceptive, unconscionable, or unfair conduct." *Struna v. Convenient Food Mart,* 828 N.E.2d 647, 652 (Ohio Ct. App. 2005) (citing *Conley v. Lindsay Acura*, 704 N.E.2d 1246, 1249 (Ohio Ct. App. 1997)).

17

Cedar Fair argues that it could not have acted knowingly because it could not have foreseen the Covid pandemic. However, plaintiffs did not plead that Cedar Fair foresaw the pandemic. Nor were they required to do so to state a claim.

The crux of plaintiffs' claim is that Cedar Fair knew that a force majeure event possibly could force it to close its parks for some or all of a season. They assert that Cedar Fair wrote its website's terms and conditions – the contract - in a way that it believed would put the risk of such an occurrence on them. Plaintiffs claim that Cedar Fair did so intending that if such an event occurred, it would not refund any portion of the pass fees. They further assert that Cedar Fair wrote its terms in a way that would not have led a reasonable consumer to understand that intent. And, when Covid forced Cedar Fair to close its parks for all or a substantial part of the 2020 season, it refused to return any portion of the pass fees.

Thus, plaintiffs have pled adequately that Cedar Fair did not fairly explain to consumers its intent if a force majeure caused it to close its parks. The consumers did not have any opportunity to bargain over the passes' terms, and there is no suggestion that they were represented by counsel. *See Jamison, supra*, 2013 WL 2152748, at *8. Thus, they have pled adequately that Cedar Fair "manipulat[ed its] consumer's understanding of the nature of the transaction at issue." Tsirikos-Karapanos, supra, 99 N.E.3d at 1215.

A force majeure event, by definition, occurs when business is disrupted due to a factor beyond control, such as an Act of God. Black's Legal Dictionary, https://thelawdictionary. org/?s=force+majeure. The facts plaintiffs have alleged in their complaint suffice at this stage to state a claim that Cedar Fair unconscionably, intentionally chose not to include a force majeure clause on its websites, thereby obscuring or concealing from the plaintiffs that they and not Cedar Fair would bear the financial consequences of a force majeure event.

While proving that such is the case might well be difficult for the plaintiffs, at this point I believe that they have adequately stated a claim for relief under § 1345.03 to survive dismissal.

For the foregoing reasons, I conclude that plaintiffs' complaint adequately pleads its § 1345 claims. Therefore, it is hereby ORDERED THAT Defendants' motion to dismiss (Doc. 30), be, and the same hereby is, DENIED. The Clerk of Court shall forthwith set a status conference in this action.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge