IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Moneva Walker, et al.,                          Case No. 3:20-cv-2176

      Plaintiffs

    v.                                                      **ORDER**

Cedar Fair, L.P., et al.,

      Defendant,

      This is a class action case arising from the wholly canceled or otherwise abbreviated 2020 season at Defendants Cedar Fair, L.P. and Cedar Fair Management, Inc. (collectively "Cedar Fair")'s various nationwide amusement parks. Plaintiffs, the putative class representatives, were 2020 season passholders at Defendants' amusement parks. They seek recompense for themselves and other similarly situated persons for the partial or complete closure of the amusement parks due to the Covid-19 pandemic. They do so under the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et seq.* ("OCSPA") and the equitable theories of unjust enrichment and money had and received.

      Pending is Defendants' Renewed Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 42). Plaintiffs oppose the Motion (Doc. 46), and Defendants have filed a reply (Doc. 48).

      For the following reasons, I deny Defendant's Motion in part and grant it in part.

## Background

### Factual Allegations

In my prior order denying Defendants' Motion to Dismiss Plaintiff's claims under OCSPA, I recited the allegations from Plaintiff's Second Amended Complaint as they related to that claim. *Walker v. Cedar Fair, L.P.*, No. 3:21CV2176, 2022 WL 1186701, at *1-2 (N.D. Ohio Apr. 21, 2022); (Doc. 33, pgID 525-28). I adopt my earlier recitation in its entirety and supplement it only where relevant to this Order.

Plaintiff Noelani Mori[1] purchased a 2020 gold season pass for Defendants' amusement park, California's Great America ("CGA"). (Doc. 18, pgID 162). CGA's webpage advertised the 2020 gold season pass as providing passholders "Unlimited Visits" to the park. (*Id.*, pgID 169). The gold season pass also granted its holders access to Defendants' other parks. (*Id.*, pgID 166).

During the online checkout process, purchasers of the CGA gold pass had access to a hyperlink labeled "Terms and Conditions." (*Id.*, pgID 171). Clicking on the "Terms and Conditions" took pass purchasers to a page containing another hyperlink labeled "Season Pass Terms." When pass purchasers clicked on this second hyperlink, they accessed another page stating, among other things:

> All operating dates and hours are subject to change without notice. All rides and attractions are subject to closings and cancellations for weather or other conditions.
> . . .
> A Gold Pass is the property of Cedar Fair L.P. and is non-transferable, non-refundable, non-exchangeable and not valid for cash.

(*Id.*, pgID 173-74).

Additionally, the back of the physical 2020 season passes states, among other things:

---

[1] Plaintiff Mori is the putative subclass representative for all similarly situated persons.

> **ALL SALES ARE FINAL** — NO REFUNDS, NO TRANFERS OR EXCHANGES, NO RAIN CHECKS, NOT VALID FOR CASH.
> . . .
> Season Pass may be revoked without refund in the event of misuse or failure to abide by applicable terms and conditions.

(*Id.*, pgID 172-73). It also states that the pass is "subject to further terms and conditions" and contains a link to the "Season Pass Terms" page. (*Id.*).

Cedar Fair L.P.'s 2019 Form 10-K, which it filed with the Securities and Exchange Commission, states that its parks "are generally open during weekends beginning in April or May, and then daily from Memorial Day until Labor Day." (*Id.*, pgID 175). It further states that the parks have an approximately "130-to 140-day operating season." (*Id.*).

Due to the Covid-19 pandemic, CGA never opened for the 2020 season, and Defendants never refunded the 2020 CGA season passholders. (*Id.*, pgID 176-77). Defendants did extend all 2020 season passes through the 2021 season for their amusement parks. (*Id.*, pgID 178).

### 1. Procedural History

Plaintiffs initially brought claims for breach of contract, unjust enrichment, money had and received, and violations of various state consumer protection laws, including the OCSPA. (Doc. 18, pgID 183-96).

Before the filing of this action, a different plaintiff filed a class action against Cedar Fair in Ohio state court alleging claims under Ohio Law for breach of contract, unjust enrichment, and money had and received – the same claims that Plaintiffs have alleged in this action, except for the OCSPA claims and the consumer protection claims under non-Ohio state law. *See Valentine v. Cedar Fair, L.P.*, 169 Ohio St. 3d 181 (2022). Accordingly, I stayed the non-OCSPA claims in this action while the identical state court claims were pendent. (Doc. 17).

In the meantime, Plaintiffs conceded that Ohio law governs the entirety of the action and

3

withdrew the consumer protection claims under the laws of states other than Ohio. (Doc. 27, pgID 279). Defendants then moved to dismiss Plaintiff's OCSPA claims, the only ones I did not stay (Doc. 30), and, on April 21, 2022, I denied that Motion. (Doc. 33).

On October 20, 2022, the Ohio Supreme Court dismissed the state court action for breach of contract, unjust enrichment, and money had and received. *See Valentine, supra*, 169 Ohio St. 3d at 187. Defendants' Renewed Motion to Dismiss Plaintiff's Second Amended Complaint relies heavily on the Ohio Supreme Court's findings and holdings in *Valentine*.

### 2. The *Valentine* Decision

The *Valentine* plaintiff was a 2020 season passholder for Cedar Point, Defendants' flagship park in Sandusky, Ohio. 169 Ohio St. 3d at 183. The plaintiff argued substantially the same breach of contract, unjust enrichment, and money had and received claims that Plaintiffs included in the Complaint in this case (Doc. 18). 169 Ohio St. 3d at 182. Notably, Cedar Point was one of Defendants' parks that opened for at least a portion of the 2020 season. The trial court took judicial notice of Cedar Point's July 9, 2020 delayed opening. *Id.* at 184.

The Ohio Supreme Court reversed the intermediate appellate court and reinstated the trial court's dismissal of the action. *Id.* at 187. The Supreme Court determined that the Cedar Point season pass was a revocable license, which Cedar Fair, L.P. could revoke without compensation. *Id.* at 183-84. It determined this by examining the terms and conditions of the season pass – specifically, the same language from the "Season Pass Terms" webpage, which I have quoted *supra*. *Id.* at 186.

The crux of the Supreme Court's dismissal of the breach of contract claim was that the plaintiff "received the benefit of the bargain." *Id.* at 184. This was so because Cedar Point had a 2020 season – albeit a shorter one due to the park's delayed opening. The plaintiff's season pass

granted her a 2020 season, and that is what she received. In light of the "Season Pass Terms," which state that Cedar Point's "operating dates and hours are subject to change without notice" and that its "rides and attractions are subject to closings and cancellations for . . . other conditions," the plaintiff could not establish contractual breach from a shortened 2020 season. *Id.* at 187. The Supreme Court took care to note that "this is not a case involving the complete failure of consideration (i.e., Cedar Fair did not fail to open at all for the season) . . . ." *Id.* at 186.

The Supreme Court also dismissed the unjust enrichment and money had and received claims. It found that those equitable claims failed because the plaintiff "received from the other that which it was agreed between them . . . ." *Id.* at 187 (quoting *Ullmann v. May*, 147 Ohio St. 468, 478 (1947) and Restatement of the Law 1st, Restitution, Section 107, Comment a (1937)). The plaintiff received a 2020 season at Cedar Point, and, by receiving the "benefit of her bargain," the equitable claims became non-cognizable. *Id.*

**Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

When considering a Rule 12(b)(6) motion, I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A

5

plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555.

## Discussion

Plaintiffs have chosen not to pursue the breach of contract claim; and the unjust enrichment and money had and received claims by the Plaintiffs who bought season passes for Defendants' amusement parks that opened for at least part of the 2020 season. I accordingly grant Defendants' Renewed Motion to Dismiss those claims.

Still at issue are (1) the OCSPA claims and (2) the unjust enrichment and money had and received equitable claims by Plaintiff, Noelani Mori, who purchased a season pass for Defendants' amusement park, California's Great America, which never opened in 2020. For the reasons that follow, I deny Defendants' Motion to Dismiss those claims.

### 1. Standing

As a threshold matter, Defendants contend that Plaintiffs have not established Article III's standing requirement.[2]

To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendants contend that Plaintiffs have not adequately pled the existence of an injury in fact. (Doc. 42, pgID 610).

An injury in fact must be "(a) concrete and particularized; and (b) actual or imminent, not

---

[2] Defendants did not challenge standing in their initial Motion to Dismiss the OCSPA claims. (Doc. 30). That is immaterial, as standing is a "jurisdictional" issue and "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "An economic injury which is traceable to the challenged action satisfies the requirements of Article III." *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1316 (6th Cir. 1992).

Plaintiffs allege that they would not have purchased, or would have spent less than they did for, season passes for Defendants' parks if they knew Defendants would close them for some or all of the 2020 season without issuing refunds. (Doc. 46, pgID 692).

Defendants counter that Plaintiffs could not have suffered an injury in fact because they received exactly what they bargained for – 2020 season passes, which were subject to adjusted dates of operation in 2020 and into 2021. (Doc. 42, pgID 615).

I disagree. Plaintiffs' claims satisfy the injury in fact requirement.

In support of their argument, Defendants largely rely on *Aleisa v. GOJO Indus., Inc.*, 538 F. Supp. 3d 764 (N.D. Ohio 2021) (Calabrese, J.). In that case, the plaintiffs brought actions under New York and California consumer protection statutes against the defendant manufacturer of Purell hand sanitizer. *Id.* at 766. The plaintiffs alleged that defendant falsely marketed its hand sanitizer as "killing over 99.99% of germs." *Id.* at 773. The plaintiffs argued that they had suffered an injury in fact under the two theories Plaintiffs now argue before me. First, that they would not have purchased Purell at all if they had known about the false marketing. *Id.* Alternatively, that they would have paid less for it. *Id.*

The court rejected plaintiffs' first theory of injury because they had not alleged that hand sanitizer failed to "accomplish its intended purpose to some material degree." *Id.* Whether the hand sanitizer killed 99.99% of all germs or some other percentage was immaterial. *See id.*

It rejected plaintiff's second theory because the complaint contained no "factually

7

supported, plausible allegations that any representation at issue resulted in payment of a premium." *Id.*

*Aleisa* is distinguishable from the instant case.

Plaintiff Mori has satisfied the first theory of injury in *Aleisa*. Plaintiff Mori's park, CGA, did not open at all for the 2020 season. There is no question that Mori's season pass materially failed to accomplish what Mori alleges was its intended purpose. That purpose being to provide its passholder with access to CGA for the 2020 season – not the 2021 season or some other time outside of the 2020 calendar year.

The allegations from the Complaint also support the second theory of injury from *Aleisa* – that Defendants overcharged all Plaintiffs. All Plaintiffs allege that they would not have "paid a premium for passes based on Defendants' misrepresentations and omissions . . . ." (Doc. 18, pgID 195). For example, Plaintiffs might have purchased a cheaper, single-day park pass but for the alleged misrepresentations and omissions. Or, if Plaintiffs knew the 2020 park season would be appreciably shorter than the "130-to 140-day operating season" that Cedar Fair allegedly represented (Doc. 18, pgID 175), they plausibly may have spent less than what they ultimately paid. These are logical inferences from Plaintiffs' Second Amended Complaint.

In any case, Plaintiffs point to a substantial body of case law that seemingly contradicts the *Aleisa* court's relatively narrow conception of economic injury and supports a finding of standing for all Plaintiffs. *See Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 884 (E.D. Mich. 2019) (finding standing in consumer protection action against truck manufacturer for allegedly falsely advertising extent of trucks' emissions and fuel economy); *see also Bechtel v. Fitness Equip. Servs.*, LLC, 339 F.R.D. 462, 474 (S.D. Ohio 2021) (finding standing where plaintiff treadmill purchasers alleged they would not have purchased, or paid less for, treadmills that

8

could not achieve their advertised horsepower); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 531 (S.D. Ohio 2011) (finding the same for purchasers of digestive food supplements, which defendants allegedly falsely advertised as having certain health benefits); *Ficarelli v. Champion Petfoods USA, Inc.*, No. 3:18-CV-00361, 2018 WL 6832075, at *6 (M.D. Tenn. Dec. 28, 2018) (same); *Crawford v. FCA US LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *2 (E.D. Mich. Aug. 13, 2021) (same).

I find the reasoning in these cases convincing and analogous to Plaintiff's allegations in this case. Plaintiffs have properly alleged standing.[34]

### 2. OCSPA Claims

Plaintiffs raise two OCSPA claims: (1) Cedar Fair's representations and omission were deceptive and unfair in violation of O.R.C. § 1345.02; and (2) Cedar Fair committed an unconscionable act or practice in connection with the sale of season passes in violation of O.R.C. § 1345.03(A).

I previously denied Defendants' Motion to Dismiss the OCSPA claims. (Doc. 33).

Defendants now move again to dismiss the OCSPA claims as part of their Renewed Motion to Dismiss. They do so under the premise that the Ohio Supreme Court's findings in

---

[3] Defendants also contend that the Ohio Supreme Court "unequivocally" stated in *Valentine v. Cedar Fair, L.P.*, 169 Ohio St. 3d 181 (2022), that season passholders "did not sustain an injury." (Doc. 42, pgID 613). I disagree. The state court's decision contains no discussion regarding Article III standing or the related concept of injury in fact. It does say that the plaintiffs did not state a claim for breach of contract. *Id.* at 184. Defendants are incorrect to conflate the two concepts.

[4] In their reply brief, Defendants argue for the first time that any injury is not fairly traceable to them. (Doc. 48, pgID 712). They argue that the Covid-19 pandemic and ensuing government "Stay at Home" orders were instead to blame. But Plaintiffs' claim to injury is that Defendants failed to issue some monetary refund in response to park closures. (Doc. 18, pgID 184-85, 193). Because it is within Defendants' ambit to issue refunds, their argument as to traceability fails.

9

*Valentine, supra*, contradict my previous analysis. (Doc. 42, pgID 618-22). In effect, Defendants are asking me to reconsider my previous Order finding that Plaintiffs have stated the OCSPA claims.

Upon careful review of *Valentine*, I see no basis for doing so.

I have observed that "[r]econsideration is only appropriate: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; or 3) to correct a clear error of law or to prevent a manifest injustice." *Cates v. Cooper Tire & Rubber Co.*, No. 3:06CV0940, 2008 WL 3876146, at *3 (N.D. Ohio Aug. 18, 2008) (internal quotations omitted).

The Ohio Supreme Court's analysis in *Valentine* satisfies none of these conditions. As I explained in detail *supra*, the Supreme Court found that Cedar Fair had not breached any contractual terms and that passholders who received a partial 2020 season stated no claim under the equitable theories of unjust enrichment or money had and received. *Valentine, supra*, 169 Ohio St. 3d at 184, 187. Those are *Valentine*'s holdings.

*Valentine* says nothing regarding the viability of Plaintiffs' OCSPA claims under O.R.C. §§ 1345.02 and 1345.03(A).

As I explained in my previous Order, a violation of the OCSPA "need not rise to the level of . . . *breach of contract*." *Walker, supra*, 2022 WL 1186701, at *5 (emphasis in original and internal quotations omitted). OCSPA claims may rise under "oral or other misrepresentations" outside of contractual terms. *Id.* (quoting *Wall v. Planet Ford, Inc.*, 825 N.E.2d 686, 692 (Ohio Ct. App. 2005)).

I found that, even in light of Defendants' website disclaimers (the ones *Valentine* relied on to hold there was no claim for breach of contract), they "cannot establish as a matter of law

10

that ordinary consumers would understand the legal distinction" from what they had advertised. *Id.* at *4. Those advertisements being that "passholders would have unlimited access for all of the 2020 season" and "parks would have an operating season lasting 130-140 days, beginning in April or May." *Id.* at *1. I therefore found that Plaintiffs had stated a claim under O.R.C. § 1345.02. *Id.* at *8.

I also found that Defendant's advertisements and the relative bargaining positions of Plaintiffs and Defendants all indicated that the Plaintiffs "pled adequately that Cedar Fair did not fairly explain to consumers its intent if a force majeure caused it to close its parks." *Id.* at *9. On that basis, I found that Plaintiffs had stated a claim under O.R.C. § 1345.03(A). *Id.*

In reaching my holdings, I considered Defendants' disclaimers regarding the non-refundability of passes and changes to operating dates and hours. *Id.* at *2. But I found that "contract-based defenses are irrelevant to an OCSPA claim . . . ." *Id.* at *5. Consequently, those disclaimers did not foreclose Plaintiffs' OCSPA claims as a matter of law.

*Valentine* was not an intervening change in controlling law as to OCSPA claims. It does not relegate my earlier order on those claims to be a clear error of law.

I determine there is no basis for me to reconsider my earlier Order denying Plaintiff's OCSPA claims. I therefore deny Defendants' Renewed Motion to Dismiss the OCSPA claims.

### 3. Unjust Enrichment and Money Had and Received

Defendants also argue that *Valentine* neutralizes Plaintiff Noelani Mori's claims for unjust enrichment and money had and received.

Here, too, I disagree.

A claim for unjust enrichment arises when: (1) a plaintiff confers a benefit upon a defendant; (2) defendant has knowledge of the benefit; and (3) the defendant retains the benefit

"where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).

A claim for money had and received "is a claim in quasi-contract which, in turn, is based upon the equitable doctrine of unjust enrichment." *Hickman v. First Am. Title Ins. Co.*, No. 1:07 CV 1543, 2008 WL 11380160, at *11 (N.D. Ohio Feb. 29, 2008) (Oliver, Jr., J.) (internal quotations omitted).

I see no relevant analytical distinction between the two claims – nor have the parties identified one – and discuss them together.

As I explained *supra*, the Ohio Supreme Court in *Valentine* held that a claim for unjust enrichment could not survive if a plaintiff "received from the other that which it was agreed." 169 Ohio St. at 187. Because the *Valentine* plaintiffs, passholders to Defendants' Cedar Point park, received a partial 2020 season, they were categorically unable to claim unjust enrichment.

That is not so for Plaintiff Mori. Her park, CGA, never opened in the 2020 calendar year. She therefore plausibly alleges that she did not receive the benefit of her bargain. *Cf. Valentine, supra*, 169 Ohio St. at 187.

Defendants counter that Plaintiff Mori received consideration in the form of an extension of her 2020 season pass to the 2021 season. (Doc. 48, pgID 715). I have already previously opined that "whether Cedar Fair's substitution of 2021 passes for 2020 passes was of equal or greater value is a question of fact that cannot be resolved at this stage of this case." *See Walker, supra*, 2022 WL 1186701, at *6. I will go further now to say that I cannot conclude as a matter of law that access to CGA for the 2021 season is the consideration that Plaintiff Mori bargained for.

Plaintiff Mori has therefore plausibly claimed that it was unjust for Defendants to retain

12

her payment despite not providing CGA access during the 2020 calendar year. While Defendants can counter that their actions were not unjust because they extended the 2020 season passes into 2021, that is a factual dispute and inappropriate for me to decide at this stage.

I therefore deny Defendants' Renewed Motion to Dismiss Plaintiff Mori's unjust enrichment and money had and received claims.

## Conclusion

For the foregoing reasons, I conclude that Plaintiffs' complaint adequately pleads its OCSPA claims and, specific to Plaintiff Mori, its unjust enrichment and money had and received claims.

Therefore, it is hereby ORDERED THAT

1. Defendants' Renewed Motion to Dismiss (Doc. 42) be, and the same hereby is, granted with regard to all Plaintiffs' breach of contract claim and the unjust enrichment and money had and received claims by all Plaintiffs aside from Plaintiff Mori;

2. Defendants' Renewed Motion to Dismiss (Doc. 42) be, and the same hereby is, denied with regard to all Plaintiffs' claims under O.R.C. §§ 1345.02 and 1345.03(A) and the unjust enrichment and money had and received claims by Plaintiff Mori; and

3. The clerk shall forthwith schedule a Case Management conference.

So ordered.

/s/ James G. Carr_____
James G. Carr
Sr. United States District Judge