**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Case No. 3:20-cv-02176
Judge James Carr

MONEVA WALKER,
JONATHAN BROWN,
HOLLY POTEAT,
KELLY SHEPPERSON,
MANDI STEWART,
NOELANI MORI, and
SHANE FOSHIA, each individually and on behalf of all others similarly situated,

      Plaintiffs,

          v.

CEDAR FAIR, L.P., and
CEDAR FAIR MANAGEMENT, INC.,

      Defendants.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL JUDGEMENTS ON THE PLEADINGS**

---

**<u>Table of Contents</u>**

I.      Plaintiffs can pursue a class action if they plead that Cedar Fair violated a reasonably specific rule adopted by the Attorney General. .................................................. 1

II.     Plaintiffs plead that Cedar Fair violated a reasonably specific rule adopted by the Attorney General. ............................................................................................................ 3

        A.      O.A.C. 109:4-3-02(D) is a reasonably specific rule that prohibits a particular deceptive practice. ...................................................................... 3

        B.      Cedar Fair's contrary arguments are unpersuasive. ................................... 4

        C.      Plaintiffs sufficiently allege that Cedar Fair violates O.A.C. 109:4-3-02(D). ......................................................................................................... 6

## Table of Authorities

**Cases**

*Boggs v. City of Cleveland*
  2021 U.S. Dist. LEXIS 101308 (N.D. Ohio May 28, 2021)....................................................... 5

*Burns v. United States*,
  542 F. App'x 461 (6th Cir. 2013)........................................................................................... 7

*EEOC v. J. H. Routh Packing Co.*,
  246 F.3d 850 (6th Cir. 2001) ................................................................................................. 9

*Marrone v. Philip Morris USA, Inc.*,
  110 Ohio St. 3d 5 (2006) .......................................................................................... 2, 3, 4, 5

*Martin v. Lamrite W., Inc*,
  2017-Ohio-8170 (Ct. App. 2017) ................................................................................... 2, 3, 6

*Miranda v. Xavier Univ.*,
  594 F. Supp. 3d 961 (S.D. Ohio 2022) ................................................................................. 5

*Nicols v. R.J. Reynolds Tobacco Co.*
  (Aug. 9, 2000), Summit C.P. No. CV 99-11-4539 ................................................................ 4

*Volbers-Klarich v. Middletown Mgmt.*,
  125 Ohio St. 3d 494 (Ohio 2010) .......................................................................................... 2

**Other Authorities**

O.A.C. 109: 4-3-10 ................................................................................................................... 2

O.A.C. 109:4-3-02 ........................................................................................................... passim

O.A.C. 109:4-3-12 ................................................................................................................ 2, 6

R.C. § 1345.05 .......................................................................................................................... 2

R.C. § 1345.09 ....................................................................................................................... 1, 2

Under Ohio consumer protection law, Plaintiffs can pursue a class action if they plead that Cedar Fair had prior notice that its ads were deceptive. One way to plead prior notice is to plead that Cedar Fair violated a reasonably specific rule adopted by the Ohio Attorney General. To be reasonably specific, a rule must be more than a generic statement like "baseless representations are deceptive." But at the same time, a rule does not need to be hyper-specific and does not need to be limited to a particular industry. If a rule has enough detail to allow a company to reasonably compare its own ads to the rule, and tell if its ads are compliant, the rule provides prior notice.

Plaintiffs plausibly plead that Cedar Fair violated the following rule: O.A.C. 109:4-3-02 (D). This rule prohibits using inconspicuous and indirect hyperlinks to hide important terms in online ads. This is not a generic prohibition like "baseless representations are deceptive." Instead, it prohibits a particular misuse of hyperlinks to conceal important terms. It includes concrete and reasonably specific instructions for how to make hyperlinks compliant.  Cedar Fair could reasonably have read this rule, compared it to its own ads, and made its own hyperlinks compliant. So Plaintiffs sufficiently plead prior notice.

I.      **Plaintiffs can pursue a class action if they plead that Cedar Fair violated a reasonably specific rule adopted by the Attorney General.**

Under Ohio consumer protection law, Plaintiffs can bring a class action if Cedar Fair had prior notice that its conduct was deceptive or unconscionable. R.C. § 1345.09(B). One way to plead prior notice is to allege that Cedar Fair engaged in conduct that the Attorney General has declared deceptive or unconscionable. R.C. § 1345.09(B) (a class action is allowed for conduct

"declared to be deceptive or unconscionable by [one of the Attorney General's rules] before the

consumer transaction"); R.C. § 1345.05 (B) (the Attorney General can adopt such rules).[1]

For an Attorney General rule to be effective, it must define the illegal practice with

"reasonable specificity." R.C. § 1345.09(B); *Marrone v. Philip Morris USA, Inc*., 110 Ohio St.

3d 5 (2006) (same).

Sometimes the Attorney General adopts rules that are so generic that they do not provide

reasonable notice. In *Marrone*, the Ohio Supreme Court addressed such a rule. The *Marrone*

plaintiffs relied on O.A.C. 109: 4-3-10. This rule "states that it is a deceptive act or practice for a

supplier to make any representations in the absence of a reasonable basis in fact." *Marrone,* 110

Ohio St. 3d 5 at 10. This is a "generic prohibition that does not refer to any specific act or

practice." *Id.* at 11. It does not say much more than: baseless representations are deceptive.

Because it is generic, it is "not sufficient to put a reasonable person on notice." *Id.* at 10*; see*

*Volbers-Klarich v. Middletown Mgmt.,*125 Ohio St. 3d 494, 502 (Ohio 2010) (summarizing

*Marrone*).

At the same time, a rule does not need to describe the illegal conduct in "every detail."

*Marrone* at 10. A rule only needs to have "substantially similarity" to a defendant's conduct, i.e.,

have the "essential circumstances or conditions" of what is illegal. *Id.*

Other rules adopted by the Attorney General are reasonably specific and therefore

effective. In *Martin*, the Ohio Court of Appeals addressed such a rule. *Martin v. Lamrite W., Inc*,

2017-Ohio-8170, ¶ 10 (Ct. App. 2017). In *Martin,* the plaintiffs relied on O.A.C. 109:4-3-12.

This rule bans deceptive price advertisements. For example, the rule prohibits ads that "purport[]

---

[1] Another way to plead prior notice is to allege that a defendant's conduct is
substantially-similar to conduct already found deceptive or unconscionable by a public Ohio
court decision. R.C. § 1345.09(B); *Marrone v. Philip Morris USA, Inc*., 110 Ohio St. 3d 5, 7-8
(2006). Plaintiffs are not asserting this theory.

to compare [the store's] prices to that of competitors and the manufacturer's suggested price," without disclosing that the reference prices are not the store's own prices. *Martin* ¶12. As *Martin* held, this rule is reasonably specific. *Id.* It is not a generic prohibition; it is particular to deceptive pricing ads. A company could reasonably read this rule, compare it to its own pricing ads, and tell if the ads were compliant. This satisfies *Marrone* and allows plaintiffs to bring a class action. *Id.*  As *Martin* illustrates, a rule does not have to be specific to a particular industry and does not need to describe every detail of the illegal business practice.

In sum, the Attorney General can enable class actions by passing reasonably specific rules. Under *Marrone*, those rules can't be totally generic. But the rules don't need to be hyper specific either and need not be limited to a particular industry.  Instead, the rules just need to describe the prohibited conduct with reasonable specificity, so that companies can compare the rules to their own ads and tell if the ads are compliant. If plaintiffs plead that a company violated a reasonably specific rule, this enables a class action.

## II.     Plaintiffs plead that Cedar Fair violated a reasonably specific rule adopted by the Attorney General.

### A.      O.A.C. 109:4-3-02(D) is a reasonably specific rule that prohibits a particular deceptive practice.

Plaintiffs plead that Cedar Fair violated O.A.C. 109:4-3-02 (D); Dkt. 18 (Second Amended Complaint or "SAC") ¶161. This rule states:

> It is a deceptive act or practice in connection with an offer made on the internet, to make any offer without stating clearly and conspicuously, in close proximity to the words stating the offer, any material exclusions, reservations, limitations, modifications, or conditions. Disclosures should be as near to, and if possible on the same screen, as the triggering offer. If scrolling or a hyperlink is necessary to view the disclosure, the advertisement should guide consumers with obvious terms or instructions to scroll down or click on the hyperlink. Hyperlinked disclosures should lead directly to the disclosed information and not require scrolling or clicking on any additional hyperlinks.

This rule is particular in several ways. It applies specifically to online advertising. It describes a particular misleading practice: hiding important terms and conditions behind a "hyperlink." And it spells out, in reasonable detail, how to make hyperlinks compliant. If a company uses hyperlinked terms, the hyperlink should: (1) be "near to, and if possible on the same screen, as the triggering offer"; (2) the company must include "obvious terms or instructions to scroll down or click on the hyperlink"; and (3) the link has to lead "directly to the disclosed information and not require scrolling or clicking on any additional hyperlinks."

This is not a generic prohibition like "baseless representations are deceptive." Instead, it is a concrete recipe for how to properly use hyperlinks to disclose important limitations on online offers. It includes instructions for where to place hyperlinks, how to draw consumers' attention to the links, and how to directly link to the key terms. A company can reasonably compare this rule to its own online ads, tell whether its ads are compliant, and if not, change the hyperlinks to make the ads compliant. So this rule provides fair prior notice.

### B.  Cedar Fair's contrary arguments are unpersuasive.

Cedar Fair's contends that O.A.C 109:4-3-02 "has been expressly deemed insufficient by Ohio's high court in *Marrone*." Mot. 2, 5, 12-14. According to Cedar Fair, *Marrone* "cited with approval" a "Summit County Common Pleas decision" that rejected rule 109:4-3-02 because it was too generic. Mot. 12 (discussing *Nicols v. R.J. Reynolds Tobacco Co*. (Aug. 9, 2000), Summit C.P. No. CV 99-11-4539); *see Marrone*, 110 Ohio St. 3d 5, 9 (citing *Nicols*). But *Marrone's* passing discussion of *Nicols* is inapplicable here.

Back in 2006, when *Marrone* was decided, O.A.C. 109:4-3-02 was more generic than it is today. Back in 2006, this rule lacked provision (D), the specific hyperlinking provision that Plaintiffs rely on here. Ex. 1 (2006 version of O.A.C. 109:4-3-02). In 2006, this rule only had the more generic provision (A). Provision (A) generally prohibits making printed offers without

4

clearly listing material exclusions. *See* Ex. 1 (A). Provision (D), in contrast, is specific to online advertising and particular to the use of hyperlinks.[2]  Because provision (D) did not exist in 2006, *Marrone* could not possibly have suggested it was too generic to be effective.

Plus, *Marrone's* discussion of O.A.C. 109:4-3-02 is dicta and thus not controlling. "Dicta is not binding on this Court." *Boggs v. City of Cleveland,* 2021 U.S. Dist. LEXIS 101308, at *9 n.2 (N.D. Ohio May 28, 2021) (collecting Sixth Circuit authority). Dicta is a passing discussion that is "unnecessary to the decision before the court and therefore not precedential." *Id.* (quoting Black's Law Dictionary (9th ed.2009)). In *Marrone*, the plaintiff relied only on O.A.C. 109:4-3-10 (not O.A.C. 109:4-3-02). *Marrone*, 110 Ohio St. 3d 5, 10 ("plaintiffs rely on Ohio Adm. Code 109: 4-3-10"). Correspondingly, the Supreme Court's holding was about O.A.C. 109:4-3-10. *Id.* at 11 (holding that "Ohio Admin. Code 109:4-3-10 is a generic prohibition that does not refer to any specific act or practice"). The passing discussion of O.A.C. 109:4-3-02 was unnecessary to this holding. So it is dicta.

Cedar Fair cites a recent Southern District decision holding that that O.A.C. 109:4-3-02 is too generic to enable a class action. Mot. 13 (citing *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 977-978 (S.D. Ohio 2022)). The entire *Miranda* analysis, however, is two sentences stating that, by endorsing *Nicols, Marrone* implicitly rejected O.A.C. 109:4-3-02. *See id.* As explained above, that analysis is both inapplicable and non-binding.[3]

Cedar Fair contends that "courts have uniformly rejected other sections of the administrative code from the same chapter as inadequate bases for providing prior notice." Mot.

---

[2] The complaint also cites provision (A) of O.A.C. 109:4-3-02. Complaint ¶160. But for certification, Plaintiffs rely on the more specific provision (D). *Id.* ¶161.

[3] Cedar Fair also cites to *Ewalt v. GateHouse Media Ohio Holdings II, Inc.*, 2021 U.S. Dist. LEXIS 40258, at *53-54 (S.D. Ohio Mar. 4, 2021). *See* Mot. 9. The discussion in that case is a single sentence holding that miscellaneous Attorney General rules are too generic under *Marrone*. *See id.* There is no persuasive analysis.

13. Cedar Fair is mistaken. As addressed above, in *Martin*, the Court of Appeals held that O.A.C. 109:4-3-12 is reasonably specific and therefore an adequate basis for pleading prior notice. *Martin v. Lamrite W., Inc*, 2017-Ohio-8170, ¶ 10 (Ct. App. 2017). And as discussed above, that rule is comparably specific to O.A.C. 109:4-3-02(D). While neither rule is confined to a particular industry, both provide reasonable detail about the prohibited practice, so that companies can read the rule and make their advertising compliant.

      **C.**      **Plaintiffs sufficiently allege that Cedar Fair violates O.A.C. 109:4-3-02(D).**

To justify its refusal to provide pass refunds, Cedar Fair points to the following season pass terms (among others): that passes are "revocable license[s]"; that "operating dates and hours are subject to change without notice"; and that "rides and attractions are subject to closings and cancellations for . . . other conditions." Dkt. 52 (Order) at 4-5; Dkt. 18 (SAC) at ¶32 (pass terms). In the *Valentine* case, the Ohio Supreme Court held that these terms defeat any breach of contract claim (at least for parks that had some 2020 season). Dkt. 52 (Order) at 4-5. And here, Cedar Fair contends that these terms defeat Plaintiffs' consumer protection claims. *See id.* (denying Cedar Fair's second motion to dismiss on this issue). But while Cedar Fair contends that these terms are crucial, it hides them behind layers of inconspicuous hyperlinks.

The complaint lays out Cedar Fair's pass purchase process. Online, consumers saw pass shopping pages that tout "Unlimited Visits in 2020." SAC at ¶19. For example:





*Id.*

As the Court has held twice, Cedar Fair's "unlimited visits" ads plausibly suggested to consumers that, if the season was substantially shortened or cancelled, consumers would receive a proportionate refund. Dkt. 33 (Order) at 8-16; Dkt. 52 (Order) at 10-11.

In violation of O.A.C. 109:4-3-02(D), Cedar Fair does not display any exclusions of limitations "clearly and conspicuously," on the "same screen" as the unlimited visits offer and "in close proximity" to it. On the page that offers "unlimited visits," Cedar Fair does not even tell consumers that there are important limitations.

Cedar Fair's terms are only mentioned later, during the pass checkout process. Cedar Fair has produced a representative screen from 2020:[4]

---

[4] Ex. 2 (Cedar Fair Rog Response identifying this page as representative). The Court may take judicial notice of these facts because they are undisputed. *Burns v. United States*, 542 F. App'x 461, 467 (6th Cir. 2013).



CF 16780 (Ex. 3).

The fine-print states that the ticket sales are "final" and there are "no refunds or exchanges." As the Court held twice, this does not necessarily tell a reasonable consumer that no refunds will be issued if Cedar Fair fails to provide the promised season. Dkt. 33 at 13-14; Dkt. 52 at 9-11. The fine-print then contains a hyperlink to additional "Terms & Conditions."

The linked terms purportedly contain the key terms that Cedar Fair asserts absolve it of liability (the revocable license term and right to change operating dates). SAC ¶32. Cedar Fair, however, does not "guide consumers with obvious terms or instructions to … click on the hyperlink." O.A.C.109:4-3-02(D). The 2020 hyperlink is not even bolded, underlined, or colored, to indicate it is clickable. *Compare* SAC ¶26 (for the 2021 shopping page—the next year— Cedar Fair at least made the link blue text).

If consumers do click the link, it does not even "lead directly to the disclosed information." O.A.C. 109:4-3-02(D). Instead, the link goes to an intermediate, ticket terms page (that does not have the season pass terms). SAC ¶27. That page then has another link to the "Season Pass Terms" page. *See id.* So in further violation of the rule, seeing the key terms requires "clicking on … additional hyperlinks." *See* Dkt. 52 (Order) at 2-3 (summarizing the pleaded facts on the pass sales process).

In sum, Cedar Fair's online ads violated O.A.C. 109:4-3-02(D) in every respect. SAC ¶161 (summarizing how Cedar Fair violate this rule). And the detailed nature of Plaintiff's allegations illustrates how the rule itself is reasonably specific. Cedar Fair could reasonably have compared this rule to its 2020 online advertisements. It could then readily tell that its hyperlinking was insufficient. And it could have changed its ads to comply, by (1) putting the hyperlink on the same page as the "unlimited visits" offer; (2) providing clear instructions to click the link; and (3) making the link go directly to the key season pass terms and conditions. There is nothing vague or subjective about complying with this hyperlinking rule—it is concrete and specific.

Because Cedar Fair has reasonable prior notice that its ads were not compliant, Plaintiffs can pursue a class action. This is especially true at this stage, because this is a motion for judgment on the pleadings. The "standard of review for a judgment on the pleadings is the same as that for a motion to dismiss" and the Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (internal quotes omitted).

Date: January 18, 2024      Respectfully submitted,

*/s/ Jonas Jacobson*
Jonas Jacobson (CA 269912)
jonas@dovel.com
Simon Franzini (CA 287631)
simon@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Richard M. Kerger (OH 0015864)
rkerger@kergerlaw.com
Kimberly A. Conklin (OH 0074726)
kconklin@kergerlaw.com
The Kerger Law Firm, LLC
4159 N. Holland-Sylvania Rd. Suite 101
Toledo, Ohio 43623
Telephone: (419) 255-5990
Facsimile: (419) 255-5997

Nicole T. Fiorelli, Esq. (#0079204)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391
(440) 352-3469 Fax
Email:  nfiorelli@dworkenlaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2024, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jonas Jacobson* _____
