**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Case No. 3:20-cv-02176
Judge James Carr

MONEVA WALKER,
JONATHAN BROWN,
HOLLY POTEAT,
KELLY SHEPPERSON,
MANDI STEWART,
NOELANI MORI, and
SHANE FOSHIA, each individually and on behalf of all others similarly situated,

      Plaintiffs,

        v.

CEDAR FAIR, L.P., and
CEDAR FAIR MANAGEMENT, INC.,

      Defendants.

---

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF
LAW IN SUPPORT THEREOF**

---

## **Table of Contents**

I. The proposed classes....................................................................................... 2

    A. Ohio Consumer Protection Class ............................................................ 2

    B. Equitable Claims Class ........................................................................... 2

II. Facts. .............................................................................................................. 3

    A. Cedar Fair advertises 2020 season passes by promising "unlimited visits." .......... 3

    B. Cedar Fair fails to inform consumers that, if it did not provide the promised season, it would keep all passholders' money. ....................... 6

    C. Cedar Fair provides only a fraction of the 2020 season (or none at all). ................ 8

    D. Cedar Fair keeps all passholders' money. ............................................ 10

    E. Plaintiffs and similar consumers seek proportionate refunds. ............................. 11

III. The Court should certify both proposed classes. ........................................ 11

    A. The proposed classes satisfy the Rule 23(a) prerequisites.................... 12

        1. The proposed classes are sufficiently numerous....................................... 12

        2. The claims present common questions of law and fact. .......................... 12

        3. The proposed class representatives are typical. ...................................... 16

        4. The proposed class representatives are adequate..................................... 17

    B. The proposed classes satisfy Rule 23(b)(3). ........................................ 18

        1. Common liability issues predominate....................................................... 18

        2. Classwide damages can be calculated by applying a formula to Cedar Fair's sales records. ........................................................... 21

        3. A class action is superior. ..................................................................... 24

    C. The Ohio Consumer Protection Class satisfies the prior notice requirement of R.C. § 1345.09(B)............................................................... 25

    D. The proposed classes are ascertainable............................................... 26

i

## Table of Authorities

**Cases**

*Amchem Prods. v. Windsor,*
　521 U.S. 591 (1997)........................................................................................... 10

*Anderson v. Disc. Drug Mart,*
　169 N.E.3d 252 (Ct. App.).................................................................................. 13

*Bacon v. Honda of Am. Mfg., Inc.,*
　370 F.3d 565 (6th Cir. 2004) ............................................................................. 16

*Blankenship v. CFMOTO Powersports, Inc.,*
　2011-Ohio-6946 (Ct. Com. Pl.) .................................................................. 14, 19

*Butler v. Sterling, Inc.,*
　2000 U.S. App. LEXIS 6419 (6th Cir. Mar. 31, 2000).................................... 13

*Cates v. Cooper Tire & Rubber Co.,*
　253 F.R.D. 422 (N.D. Ohio 2008) ..................................................................... 20

*Davidson v. Henkel Corp.,*
　302 F.R.D. 427 (E.D. Mich. 2014) .................................................................... 18

*Dillow v. Home Care Network, Inc.,*
　2017 U.S. Dist. LEXIS 85788 (S.D. Ohio June 5, 2017) ................................. 12

*Eddleman v. Jefferson Cty.,*
　1996 U.S. App. LEXIS 25298 (6th Cir. 1996) .................................................. 11

*Golden v. City of Columbus,*
　404 F.3d 950 (6th Cir. 2005) ............................................................................. 12

*Goree v. Northland Auto Enterprises Inc.,*
　2020-Ohio-3457 (Ct. App) .......................................................................... 14, 19

*Hendricks v. Total Quality Logistics, LLC,*
　292 F.R.D. 529 (S.D. Ohio 2013)...................................................................... 24

*Hicks v. State Farm Fire & Cas. Co.,*
　965 F.3d 452 (6th Cir. 2020) ...................................................................... 18, 21

*Humphrey v. Stored Value Cards,*
　2018 U.S. Dist. LEXIS 195811 (N.D. Ohio Nov. 16, 2018)....................... 14, 18, 20

*In re Am. Med. Sys., Inc.,*
　75 F.3d 1069 (6th Cir. 1996) ............................................................................. 16

*In re Pop,*
　2023 U.S. App. LEXIS 20000 (6th Cir. Aug. 2, 2023) ..................................... 18

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litigation,*
　722 F.3d 838 (6th Cir. 2013) ........................................................... 13, 18, 20, 23

*Kelly v. Montgomery Lynch & Assocs.,*
　2007 U.S. Dist. LEXIS 93656 (N.D. Ohio Dec. 19, 2007) ............................... 11

*Kirkbride v. Kroger Co.*,
2022 U.S. Dist. LEXIS 123530 (S.D. Ohio July 12, 2022) ................................. 15, 20

*Krueck v. Youngstown State Univ.*,
131 N.E.3d 1030 (Ct. App.) ................................................................................. 13

*Lauber v. Belford High Sch.*,
2012 U.S. Dist. LEXIS 165780 (E.D. Mich. Jan. 23, 2012) ................................. 15

*Lee v. Javitch, Block & Rathbone, LLP*,
522 F. Supp. 2d 945 (S.D. Ohio 2007) ............................................................... 12

*Lyngaas v. Curaden AG*,
992 F.3d 412 (6th Cir. 2021) ................................................................................. 3

*Passa v. City of Columbus*,
266 F.R.D. 197 (S.D. Ohio 2010) ........................................................................ 14

*Pfaff v. Whole Foods Mkt. Grp., Inc.*,
2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sep. 29, 2010) ....................... 14, 19, 20

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................ 23

*Phillips v. Andy Buick, Inc.*,
2006-Ohio-5832 (Ct. App.) ............................................................................ 14, 19

*Powell v. Tosh*,
280 F.R.D. 296 (W.D. Ky. 2012) ........................................................................ 24

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) .............................................................................. 19

*Prater v. Ohio Educ. Ass'n*,
2008 U.S. Dist. LEXIS 88511 (S.D. Ohio June 26, 2008) .................................... 12

*Rikos v. P&G*,
799 F.3d 497 (6th Cir. 2015) ...................................................................... passim

*San Allen v. Buehrer*,
11 N.E.3d 739 (Ct. App.) ..................................................................................... 15

*Schemmer v. ChartOne, Inc.*,
2007 U.S. Dist. LEXIS 45519 (N.D. Ohio June 22, 2007) .................................... 21

*Trollinger v. Tyson Foods, Inc.*,
2006 U.S. Dist. LEXIS 74114 (E.D. Tenn. Oct. 10, 2006) ................................... 24

*Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*,
182 F.R.D. 500 (W.D. Mich. 1998) ..................................................................... 24

*W. Ohio Colt Racing Ass'n v. Fast*,
2009-Ohio-1303 (Ct. App.) .................................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................... 12, 14

*Willis v. Big Lots, Inc.*,
  242 F. Supp. 3d 634 (S.D. Ohio 2017) ................................................................. 16

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ........................................................... 17, 18, 23

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................ 11, 16, 17

Fed. R. Civ. P. 23(b) ........................................................................... 17, 18, 23

**Statutes**

O.A.C. 109:4-3-02 ...................................................................................... 25

R.C. § 1345.05 ........................................................................................... 24

R.C. § 1345.09 ........................................................................................... 24

**Other Authorities**

3 Federal Litigation Guide § 42.164                                                    21

4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed.)                            21

iv

Cedar Fair owns thirteen amusement parks. Plaintiffs and ███████████████ of others bought 2020 season passes to the parks. All passes offered unlimited visits to consumers' park of choice throughout the 2020 season. But due to the pandemic, Cedar Fair could provide only a fraction of the 2020 season (or no 2020 season at all). Cedar Fair then refused refunds and kept all the money that passholders paid for a 2020 season it could not provide. Plaintiffs and the proposed classes seek proportionate refunds.

Plaintiffs move to certify two classes:

1. **Ohio Consumer Protection Class**. This class asserts an Ohio Consumer Sales Practices Act claim. This claim alleges that Cedar Fair's ads misled reasonable consumers to believe that, if Cedar Fair could not provide the promised 2020 season, passholders would receive proportionate refunds.

2. **Equitable Claims Class**. This class asserts unjust enrichment and money had and received claims, on behalf of passholders to parks that never opened in 2020. The claims allege that it was unjust for Cedar Fair to take the money that passholders paid for 2020 passes, but provide no bargained-for consideration in return.

A case is well-suited for certification if the claims focus on a common course of conduct that affected all class members. This allows the factfinder to decide key liability issues based on common evidence.

For the Ohio Consumer Protection Class, the claim focuses on Cedar Fairs' misleading "unlimited visits" ads, and its inadequate disclosure of its intent to keep passholders' money if parks could not open. The ads and disclosures were the same classwide. Cedar Fair refused refunds classwide. And because this claim turns on whether an objective, reasonable consumer would be misled, there is no need to examine how the ads subjectively impacted class members. A jury can decide whether the ads were misleading based on common evidence.

For the Equitable Claims Class, the claims focus on Cedar Fair accepting money for a 2020 season, but failing to provide any of that season. Instead of offering refunds, Cedar Fair

forced all class members to pay for a 2021 pass that they never bargained for and that was not equivalent to a 2020 pass. Cedar Fair's conduct is the same for all class members. And based on common evidence, the factfinder can decide, classwide, whether this conduct was unjust.

A class action is also the best way to resolve this case. Because individual passes cost about ▮▮▮ on average, requiring passholders to bring individual claims would effectively foreclose consumers' ability to seek relief. This is why Rule 23 exists. Plaintiffs meet all requirements to certify both classes.

## I. The proposed classes.

Plaintiffs move to certify the following two classes.[1] Ohio law applies to all proposed class members. Dkt. 52 (Order) at 3-4.

### A. Ohio Consumer Protection Class

- <u>Definition</u>: Consumers who purchased a 2020 Cedar Fair season pass, via the park website, before March 13, 2020, and did not receive a refund.[2]

- <u>Claims</u>: Ohio Consumer Sales Practices Act. Dkt. 18 at PageId193

- <u>Representatives</u>: Holly Poteat, Jonathan Brown, Mandi Stewart, Kelly Shepperson, and Noelani Mori [3]

### B. Equitable Claims Class

- <u>Definition</u>: Consumers who purchased a 2020 season pass—via the park website or at the park—to California's Great America, Canada's Wonderland, or Valleyfair, before March 13, 2020, and did not receive a refund. Platinum pass purchasers are excluded from this class.

---

[1] The following people are excluded from both proposed classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

[2] March 13 is when Cedar Fair announced that the pandemic would close parks.

[3] Plaintiffs are not offering Plaintiff Moneva Walker or Shane Foshia as representatives.

- <u>Claims</u>: (1) unjust enrichment and (2) money had and received. Dkt. 18 at PageId184-85.

- <u>Representative</u>: Noelani Mori

## II.    Facts.

A plaintiff has "greater evidentiary freedom at the class certification stage" and the facts presented "need not amount to admissible evidence." *Lyngaas v. Curaden AG*, 992 F.3d 412, 428-429 (6th Cir. 2021) (cleaned up). Sometimes "the issues are plain enough from the pleadings." *Id.* (cleaned up). A court may also consider any evidence that appears "reliable" at this preliminary stage. *Id.*

### A.    Cedar Fair advertises 2020 season passes by promising "unlimited visits."

Cedar Fair owns and operates thirteen amusement parks in the United States and Canada.[4]



Ex. 1 (Cedar Fair Presentation); Dkt. 54 ("Answer") ¶1 (admitting Dkt. 18 (Second Amended Complaint or "SAC") ¶1).

---

[4] Cedar Point, Carowinds, Dorney Park, California's Great Adventure, Knott's Berry Farm, Kings Dominion, Kings Island, Michigan's Adventure, Valleyfair, Worlds of Fun, Schlitterbahn New Braunfels, Schlitterbahn Galveston, and Canada's Wonderland. *See* Ex. 1.

For the 2020 season, Cedar Fair sold season passes to the public. Answer ¶15 (admitting SAC ¶15). All passes have the same core benefit: unlimited visits to consumers' park of choice throughout the 2020 season. Ex. 2 (Cedar Fair Response to Rog. 1).[5]

Cedar Fair sold season passes on its park websites and at its parks. Answer ¶15 (admitting SAC ¶15). While prices varied by park and pass tier, on average a 2020 season pass cost about ▉▉▉ Todd Decl. ¶¶18-19. On the park websites, the pass purchase pages promised "unlimited visits" for the 2020 season. For example:





---

[5] Season passes came in three tiers: regular, gold, and platinum. Ex. 2 (Cedar Fair Response to Rog. 1). Higher tiers have peripheral benefits like discounts, free parking, and admission at other parks (for Platinum passes). *Id.* Consumers could also buy add-on benefits, such as dining, drink refills, and Fast Lane (priority lines). Answer ¶18 (admitting SAC ¶18).



Ex. 3 at PLAINTIFF000596; PLAINTIFF000607; PLAINTIFF000628.

These ads were materially-similar at all parks. *Id.* Cedar Fair also made the same

promises throughout its printed advertisements. Ex. 4 (Cedar Fair print ads). For example:





Ex. 3 at CF0968; CF1012.

On the park websites, a calendar displayed the expected operating days and hours, for each month in 2020. Ex. 5. The following table summarizes the promised 2020 season:

| Park | Expected 2020 Opening | Expected 2020 Closing |
|---|---|---|
| Cedar Point | May 9, 2020 | November 1, 2020 |
| Carowinds | March 21, 2020 | December 21, 2020 |
| Dorney Park | May 1, 2020 | November 1, 2020 |
| California's Great America | March 21, 2020 | January 3, 2021 |
| Knott's Berry Farm | January 1, 2020 | December 31, 2020 |
| Kings Dominion | March 28, 2020 | December 31, 2020 |
| Kings Island | April 10, 2020 | December 31, 2020 |
| Michigan's Adventure | May 20, 2020 | September 13, 2020 |
| Valley Fair | May 15, 2020 | October 31, 2020 |
| Worlds of Fun | April 9, 2020 | December 31, 2020 |
| New Braunfels | March 7, 2020 | September 20, 2020 |
| Galveston | March 7, 2020 | September 20, 2020 |
| Canada's Wonderland | April 24, 2020 | December 31, 2020 |

Ex. 6 (Cedar Fair Third Supp. Response to Rog. 2). The promised 2020 season was typical of past seasons. *Id.* ("the 2020 expected operating dates represent the typical operating season in past years for all parks."); Ex. 7 (Cedar Fair 10-K) (parks typically have a "130- to 140-day operating season.").

**B.  Cedar Fair fails to inform consumers that, if it did not provide the promised season, it would keep all passholders' money.**

As the Court held twice, Cedar Fair's "unlimited visits" ads plausibly suggested to reasonable consumers that, if the season was substantially shortened or cancelled, consumers would receive a proportionate refund. Dkt. 33 (Order) at 8-16; Dkt. 52 (Order) at 10-11. Cedar Fair failed to adequately disclose to consumers that, if the season was substantially shortened or canceled, Cedar Fair would keep all passholders' money.

In 2020, Cedar Fair's checkout process included the following shopping cart page:

6



Ex. 8.

The fine-print states that the ticket sales are "final" and there are "no refunds or exchanges." As the Court held, this suggests that a consumer would not get their money back if they did not want the pass; it does not necessarily tell a reasonable consumer that no refunds will be issued if Cedar Fair fails to provide the promised season. Dkt. 33 at 13-14; Dkt. 52 at 9-11. The fine-print then contains a hyperlink to "Terms & Conditions."

As the screenshot illustrates, purchasers are not required to view the Terms and Conditions or check a box indicating agreement. The 2020 hyperlink is not even bolded, underlined, or colored, to indicate it is clickable. *Compare* SAC ¶26 (for the 2021 shopping page—the next year—Cedar Fair made the link blue text). And the hyperlink does not lead directly to the relevant Season Pass Terms. Instead, the blue "Terms & Conditions" link goes to an intermediate, ticket terms page. SAC ¶27; Jacobson Decl. ¶2. That intermediate page then has another hyperlink to arrive at the "Season Pass Terms" page. *See id.*

The Season Pass Terms were materially the same for all parks. *See* Answer ¶32 (admitting SAC ¶32); Ex. 9 (2020 terms). These terms contain the clauses that Cedar Fair asserts absolve it of liability. Dkt. 52 at 4-5 (Cedar Fair points to the following season pass terms: that passes are "revocable license[s]"; that "operating dates and hours are subject to change without notice"; and that "rides and attractions are subject to closings and cancellations for . . . other conditions."). But Cedar Fair hides these key terms behind layers of inconspicuous hyperlinks.

As the Court held, the Season Pass Terms cannot "foreclose Plaintiffs' OCSPA claims as a matter of law" because they do not clearly tell consumers that "Cedar Fair would not provide any compensation if it closed its parks for all or a substantial part of the season." Dkt. 52 at 11, Dkt. 33 at 13-14; Dkt. 33 at 13-14 ("plaintiffs have adequately pled that a reasonable purchaser might not have understood the disclaimers to mean that Cedar Fair would not provide any compensation if it closed its parks for all or a substantial part of the season.").

### C.    Cedar Fair provides only a fraction of the 2020 season (or none at all).

On March 13, 2020, Cedar Fair announced that, due to the pandemic, it would close parks and delay openings. Ex. 10. The following table shows the actual 2020 operating days: [6]

| Park | 2020 Opening | 2020 Closing |
|---|---|---|
| Cedar Point | July 7, 2020 | November 1, 2020 |
| Carowinds | November 21, 2020 | December 20, 2020 |
| Dorney Park | July 7, 2020 | November 1, 2020 |
| California's Great America | -- | -- |
| Knott's Berry Farm | January 1, 2020 | March 14, 2020 |
| Kings Dominion | December 5, 2020 | December 31, 2020 |
| Kings Island | July 6, 2020 | November 1, 2020 |
| Michigan's Adventure | July 16, 2020 | September 9, 2020 |
| Valley Fair | -- | -- |
| Worlds of Fun | June 22, 2020 | September 7, 2020 |
| New Braunfels | June 13, 2020 | September 20, 2020 |
| Galveston | June 13, 2020 | September 20, 2020 |
| Canada's Wonderland | -- | -- |

---

[6]A "--" indicates that the park never opened in 2020.

8

Ex. 6 (Cedar Fair Second Supp. Response to Rog. 3).

As the table shows, California's Great America, Canada's Wonderland, and Valleyfair never opened. Kings Dominion and Carowinds were closed for most of the season, opening only briefly at the end of the year. Cedar Point was scheduled to open May 9, but did not open until July 7. Knott's Berry Farm was scheduled to be open all year, but was only open January 1 to March 14. Worlds of Fun was scheduled to be open April 9, but did not open until June 22, and then closed early in September (instead of its scheduled late-December closing).

The table below summarizes the percentage of the expected 2020 season (in number of weeks) that Cedar Fair delivered, for each park:

| Park | Percentage of 2020 Season Delivered |
|---|---|
| Cedar Point | 67% |
| Carowinds | 11% |
| Dorney Park | 64% |
| California's Great Adventure | 0% |
| Knott's Berry Farm | 20% |
| Kings Dominion | 10% |
| Kings Island | 45% |
| Michigan's Adventure | 48% |
| Valleyfair | 0% |
| Worlds of Fun | 29% |
| Canada's Wonderland | 0% |
| Schlitterbahn New Braunfels | 51% |
| Schlitterbahn Galveston | 51% |

Todd Decl. ¶20 (Table 7).

9

### D.     Cedar Fair keeps all passholders' money.

Cedar Fair refused to refund passholders' money, due to the lost season. *See, e.g.,* Ex. 11 (email from Cedar Fair to Ms. Stewart) ("we are not issuing refunds for any 2020 season pass purchases."); Todd Decl. ¶13 n.26; ¶15 n.33 (de minimis passholders received refunds and they are excluded from the proposed classes).

Instead, Cedar Fair forced all 2020 passholders to purchase a 2021 pass (instead of getting a refund). Ex. 11 (email from Cedar Fair) (stating that, instead of offering any refunds, Cedar Fair would extend 2020 passes to 2021). A 2021 pass, however, was not what Cedar Fair advertised and not what passholders bargained for. Plus, unlike the promised season (a normal 2020 season), the 2021 season was substantially restricted by the ongoing pandemic. The pandemic continued to rage in 2021. *See* Ex. 12 (August 2021: "Ohio facing 'perfect storm' as delta variant fuels surge in COVID cases"); Ex. 13 (July 2021: "US in 'another pivotal moment' as Delta variant drives surge in Covid cases"); Dkt. 33 at 12 (Plaintiffs allege that "Covid continued to pose a significant risk during the 2021 season." As Cedar Fair acknowledges, due to the ongoing pandemic, it "delayed the opening of our U.S. properties for the 2021 operating season until May 2021 and opened [its] Canadian property in July 2021. Upon opening in 2021, [it] operated with capacity restrictions, guest reservations, and other operating protocols in place." Ex. 14 (Cedar Fair 2021 10-K).

As the Court held: "I have already previously opined that whether Cedar Fair's substitution of 2021 passes for 2020 passes was of equal or greater value is a question of fact that cannot be resolved at this stage of this case. … I will go further now to say that I cannot conclude as a matter of law that access to … the 2021 season is the consideration that Plaintiff Mori bargained for." Dkt. 52 at 12 (internal quotes omitted); Dkt. 33 at 11-13.

### E.      Plaintiffs and similar consumers seek proportionate refunds.

All proposed class representatives purchased a 2020 season pass, from a park website, before Cedar Fair announced park closures (before March 12, 2020). Ex. 15 (Cedar Fair Response to RFAs 20-25) (admitting that each Plaintiff "paid [] in full for a 2020 season pass"); Todd Decl. ¶6 (summarizing Plaintiffs' pass purchases). Like Plaintiffs, ███████████ of proposed class members likewise purchased 2020 season passes. Todd Decl. ¶¶13, 15. Plaintiffs and proposed class members seek proportionate refunds for the 2020 season that Cedar fair did not provide.

## III.    The Court should certify both proposed classes.

"To gain certification under Rule 23(b)(3), a class must satisfy the [prerequisite] requirements of Rule 23(a)." *Amchem Prods. v. Windsor,* 521 U.S. 591, 597 (1997). The class "must also meet the Rule 23(b)(3) criteria that common question 'predominate over any questions affecting only individual members' and that class resolution be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)).

Certification is not a "dress rehearsal for the trial on the merits." *Rikos v. P&G,* 799 F.3d 497, 505 (6th Cir. 2015) (cleaned up). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (internal quotes omitted).

"Class certification is appropriate if the [district] court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." *Riko*s, 799 F.3d at 504. The Court has "substantial discretion" when deciding whether to certify a class. *Id.* And the "Sixth Circuit recognizes a presumption in favor of certification." *Kelly v. Montgomery Lynch & Assocs*., 2007

U.S. Dist. LEXIS 93656, at *5 (N.D. Ohio Dec. 19, 2007); *Eddleman v. Jefferson Cty.*, 1996

U.S. App. LEXIS 25298, at *9 (6th Cir. 1996) (non-precedential) ("any doubts as to certification

should be resolved in favor of plaintiffs").

    **A.**    **The proposed classes satisfy the Rule 23(a) prerequisites.**

    Under Rule 23(a), a class must satisfy four elements: numerosity (joinder is impracticable

because the class is so large); commonality (questions of law or fact exist that are common to the

class); typicality (Plaintiffs' claims are typical of class members' claims); and adequacy

(Plaintiffs will fairly and adequately protect the interests of absent class members). The proposed

classes satisfy each element.

    **1.**    **The proposed classes are sufficiently numerous.**

    This requirement is met if the class has enough members such that "joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). There is "no strict numerical test" and the

number of class members need only be substantial. *Golden v. City of Columbus*, 404 F.3d 950,

965 (6th Cir. 2005) (internal quotes omitted). A "class of 40 or more members is sufficient…."

*Dillow v. Home Care Network, Inc*., 2017 U.S. Dist. LEXIS 85788, at *6 (S.D. Ohio June 5,

2017) (holding that 230 class members is more than sufficient). Here, numerosity is undisputed.

Based on Cedar Fair's records, there are over ████ passholders in the Consumer Protection

Class and over ████ passholders in the Equitable Claims Class. Todd Decl. ¶¶ 13, 15. Any

individual park alone meets the numerosity requirement. Ex. 15 (Cedar Fair Responses to RFAs

12-15).

    **2.**    **The claims present common questions of law and fact.**

    Commonality requires that "there are questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2). The "claims must depend upon a common contention … that is capable of

class wide resolution—which means that determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "In other words, named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505.

Showing commonality is "not an onerous task. Plaintiff must show a common course of conduct, or a common legal or factual issue. Factual differences among putative class members do not defeat commonality." *Lee v. Javitch, Block & Rathbone, LLP,* 522 F. Supp. 2d 945, 957 (S.D. Ohio 2007); *Prater v. Ohio Educ. Ass'n*, 2008 U.S. Dist. LEXIS 88511, at *7 (S.D. Ohio June 26, 2008) ("Commonality does not mean that each class members claims must be identical; rather, commonality is satisfied if 'the members of the class have allegedly been affected by a *general* policy of the Defendant and the general policy is the focus of the litigation.'"). There "need only be one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litigation*, 722 F.3d 838, 853 (6th Cir. 2013). Both proposed classes satisfy commonality.

<u>Ohio Consumer Protection Class</u>

The OCSPA prohibits advertisements that are likely to mislead a reasonable consumer. *Krueck v. Youngstown State Univ.*, 131 N.E.3d 1030, 1034-35 (Ct. App.) ("The determination of whether a sales practice is deceptive is based upon a reasonableness standard."); *Anderson v. Disc. Drug Mart*, 169 N.E.3d 252, 261 (Ct. App.) ("Whether a supplier's act or omission violates the CSPA 'depends on how a reasonable consumer would view it.'"). The OCSPA is like false advertising laws in other states, which also use the reasonable consumer standard. *See, e.g.,*

*Rikos*, 799 F.3d at 507 ("The false-advertising laws at issue punish companies that sell products using advertising that misleads the reasonable consumer").

Under the "reasonable consumer" standard, whether an ad is deceptive is an objective issue that does not depend on the subjective beliefs of individual class members. This makes it a common issue ideal for class certification. *See Butler v. Sterling, Inc*., 2000 U.S. App. LEXIS 6419, at *13 (6th Cir. Mar. 31, 2000) ("part of the relevant inquiry in an OCSPA case—whether a defendant's conduct was 'likely to induce' a misperception in the consuming public—is an objective consideration and, therefore, a showing of subjective reliance is probably not necessary to prove a violation of the OCSPA"); *Rikos*, 799 F.3d at 507 (under the objective reasonable consumer standard, consumers' subjective experiences are "irrelevant"); *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-255 (9th Cir. 2018) (false advertising claims that turn on the reasonable consumer test are "ideal for class certification").

As the Court explained, a key issue is "whether Cedar Fair's advertising would have led a reasonable consumer to believe that, if Cedar Fair failed to provide a substantial portion of the unlimited visits that it had promised, it would return a proportionate share of the passes' purchase price." Dkt. 33 at 8. Cedar Fair's "unlimited visits" ads, and its terms and conditions, were the same for all parks. And it adopted a classwide policy of refusing refunds for park closures. *See* Section II above. Whether this was objectively misleading, to reasonable consumers, is a common question. It is "central to the validity" of the claims and the jury can resolve it "in one stroke." *Wal-Mart,* 564 U.S. 338 at 350.  So commonality is satisfied. *See Phillips v. Andy Buick, Inc*., 2006-Ohio-5832, ¶¶ 26-27 (Ct. App.) (finding commonality and certifying a class under the OCSPA); *Rikos,* 799 F.3d at 507 (defendant "failed to identify a single false-advertising case where a federal court has denied class certification because of a lack

14

of commonality."); *Goree v. Northland Auto Enterprises Inc.*, 2020-Ohio-3457, ¶76 (Ct. App) (common questions predominated for OSCPA claim where class subject to "common misrepresentations and omissions"); *Blankenship v. CFMOTO Powersports, Inc.*, 2011-Ohio-6946, ¶28 (Ct. Com. Pl.) (certifying OSCPA class where misrepresentations were contained in class members' written warranty and on website); *Passa v. City of Columbus*, 266 F.R.D. 197, 206 (S.D. Ohio 2010) (holding that an OSCPA claim involving standard representations was properly certified).

Equitable Claims Class

Courts routinely certify unjust enrichment claims when a plaintiff alleges that a common course of conduct was unjust. *Pfaff v. Whole Foods Mkt. Grp., Inc.*, 2010 U.S. Dist. LEXIS 104784, at *16 (N.D. Ohio Sep. 29, 2010) ("a single course of wrongful conduct [is] particularly well-suited to class certification") (internal quotes omitted); *Humphrey v. Stored Value Cards*, 2018 U.S. Dist. LEXIS 195811, at *15-16 (N.D. Ohio Nov. 16, 2018) (certifying unjust enrichment claims that rested on a common course of conduct); *Lauber v. Belford High Sch.*, 2012 U.S. Dist. LEXIS 165780, at *7 (E.D. Mich. Jan. 23, 2012) (certifying an unjust enrichment claim where the "[defendant's] standardized conduct is an issue common to all members of the purported class" and this "standardized conduct gives rise to liability for… unjust enrichment."); *Kirkbride v. Kroger Co.*, 2022 U.S. Dist. LEXIS 123530, at *31 (S.D. Ohio July 12, 2022) (collecting authority).

Plaintiffs' equitable claims turn on the same central question: whether Cedar Fair's retention of 2020 season pass fees was unjust, when there was no 2020 season. *See* Dkt. 52 at 11-

15

12 (finding no analytical difference between the two equitable claims).[7] This question arises from a common course of conduct by Cedar Fair. Passholders paid Cedar Fair for the 2020 season. For the parks and passes at issue, Cedar Fair did not provide a single day of that season. It then refused refunds and instead forced all passholders to accept something they never bargained for (a 2021 pass) that was not equivalent. *See* Section II.D above.

Whether this common conduct was unjust is a "common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505. Commonality is met.[8]

### 3.    The proposed class representatives are typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" To "meet the typicality requirement, the plaintiffs must show that their 'injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.'" *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572 (6th Cir. 2004) (cleaned up). Put another way, a named plaintiff's claim is typical of the class if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 645 (S.D. Ohio 2017) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d

---

[7] The elements of an unjust enrichment are: "(1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained that benefit under circumstances in which it would be unjust for him to retain that benefit." *San Allen v. Buehrer*, 11 N.E.3d 739, 781 (Ct. App.); *accord W. Ohio Colt Racing Ass'n v. Fast*, 2009-Ohio-1303, ¶ 53 (Ct. App.) (Money had and received claim "is one based in equity, not on a contractual but rather a moral obligation to make restitution where keeping the benefits would result in inequity or injustice.")

[8] In its related motion to strike, Cedar Fair made several arguments against commonality. *See* Dkt. 63. Those arguments are unpersuasive, for the reasons Plaintiffs explain in their opposition to that motion. *See* Dkt. 69.

1069, 1082 (6th Cir. 1996)). "The class representative's claims need not be factually identical to the class members' claims in order to satisfy the typicality requirement, which is liberally construed." *Willis*, 242 F. Supp. 3d at 645.

<u>Consumer Protection Class</u>

Like other class members, Holly Poteat, Jonathan Brown, Mandi Stewart, Kelly Shepperson, and Noelani Mori purchased a 2020 season pass from a park website, before March 13, 2020. Like other class members, these Plaintiffs paid for unlimited visits during the 2020 season, but received only a fraction of that season (or none). Their injury arises from the same conduct as other class members: Cedar Fair's misleading "unlimited visits" ads and its failure to clearly inform passholders that, if parks did not open, it would keep their money. And these Plaintiffs' legal theory is the same: a violation of the Ohio Consumer Sales Practices Act. They are typical.

<u>Equitable Claims Class</u>

Like other class members, Noelani Mori paid for a pass to a park that never opened in 2020 (California's Great America). Her injury arises from the same conduct as other class members: Cedar Fair's failure to provide refunds, despite providing no 2020 season at all. And her legal theory is the same: unjust enrichment and money had and received. She is typical.

**4.    The proposed class representatives are adequate.**

Adequacy is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry … serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (internal quotes omitted). This means that: "1) the representative must have common interests

17

with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 543 (internal quotes omitted).

Here, all proposed class representatives are members of the relevant classes. And all have a common interest: seeking proportionate refunds. All have vigorously prosecuted this action, including producing documents and responding to Cedar Fair's written discovery. Jacobson Decl. ¶9. Plaintiffs are represented by attorneys with substantial experience in class-action litigation, who will vigorously prosecute the interests of the class. *See* Fiorelli Decl. ¶¶9-10; Fiorelli Decl. Ex. A; Jacobson Decl. ¶¶3-8; Ex. 16 (Dovel Resume). The proposed class representatives are adequate.

* * *

In sum, the proposed classes satisfy all prerequisites of Rule 23(a).

## B.     The proposed classes satisfy Rule 23(b)(3).

To satisfy Fed. R. Civ. P. 23(b)(3), "questions of law or fact common to the class members [must] predominate over any questions affecting only individual members."  If common liability issues predominate, the need for individual damages calculations cannot defeat certification. This is especially true if damages can be calculated by applying a formula to a defendant's records. In addition, a "class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Here, all criteria are met.

### 1.     Common liability issues predominate.

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'" *Young,* 693 F.3d at 544 (internal quotes omitted). Predominance requires only that "common, aggregation-enabling, issues in the case are more

prevalent or important than the non-common, aggregation-defeating, individual issues." *In re Pop*, 2023 U.S. App. LEXIS 20000, at *5-6 (6th Cir. Aug. 2, 2023) (internal quotes omitted); *Humphrey,* 2018 U.S. Dist. LEXIS 195811, at *15-16 ("predominance does not require that every claim element be fit for class resolution. It only requires that the common issues predominate over individual ones").

So long as common issues are more important, "that a defense may arise and may affect different class members differently" cannot defeat predominance. *Young*, 693 F.3d at 544 (internal quotes omitted); *Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452, 460 (6th Cir. 2020) (plaintiffs can satisfy predominance even if "some affirmative defenses peculiar to some individual class members.").

And while a plaintiff should have "evidence common to the class," a plaintiff "class need not prove that each element of a claim can be established by classwide proof." *In re Whirlpool*, 722 F.3d at 858.

Under "Sixth Circuit authority," a "single course of wrongful conduct can easily satisfy the predominance requirement with respect to liability." *Davidson v. Henkel Corp*., 302 F.R.D. 427, 443 (E.D. Mich. 2014) (citing *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)); *Pfaff,* 2010 U.S. Dist. LEXIS 104784, at *16 ("a single course of wrongful conduct [is] particularly well-suited to class certification" because it satisfies predominance).

<u>Ohio Consumer Protection Class</u>

The key liability issue—whether Cedar Fair's ads were deceptive to reasonable consumers—is a common issue susceptible to classwide proof. *See* Dkt. 17 (Order) at PageID 157 (the "events plaintiffs rely on for [the consumer protection] claims are Cedar Fair's alleged conduct in persuading them to purchase the passes."). As explained above, this issue turns

whether an objective, reasonable consumer would be misled by Cedar Fair's "unlimited visits" ads. The ads (and Cedar Fair's terms) are the same classwide. And Plaintiffs have common proof of what the ads (and the terms) said. *See* Section II above; *Rikos*, 799 F.3d at 511 (holding that predominance is satisfied when defendant engaged in a "comprehensive marketing strategy with a uniform core message."). Cedar Fair's refusal to provide refunds was also a classwide policy, susceptible to common proof. *See* Section II.D. In other words, Plaintiffs allege that Cedar Fair engaged in a "single course of wrongful conduct." *Pfaff,* 2010 U.S. Dist. LEXIS 104784, at *16.

Accordingly, predominance is satisfied. *See Phillips*, 2006-Ohio-5832, ¶¶ 26-27 (finding predominance and certifying an OSCPA class); *Goree*, 2020-Ohio-3457, ¶76 (common questions predominated for OSCPA claim where class subject to "common misrepresentations and omissions"); *Blankenship*, 166 Ohio Misc. 2d 21 at 46 (finding predominance satisfied and certifying OSCPA class); *Passa,* 266 F.R.D. 197 at 206 (holding that an OSCPA claim involving standard representations in letters was properly certified).

<u>Equitable Claims Class</u>

Like the OCSPA claims, Plaintiffs' equitable claims focus on a single course of wrongful conduct by Cedar Fair, which Plaintiffs can prove using common evidence. As described above, the issue is whether it was unjust for Cedar Fair to keep the money that passholders paid for the 2020 season, despite providing no 2020 season (and instead forcing passholders to accept a 2021 pass that they did not bargain for). Cedar Fair's failure to provide the 2020 season was uniform across this class, as was its refusal to provide refunds. This common course of conduct is all suspectable to common proof. *See* Section II.D.  *See Humphrey,* 2018 U.S. Dist. LEXIS 195811, at *15-16 (finding predominance when the "factual bases of the Ohio-law claims—that Plaintiff's funds were *involuntarily converted* into a medium carrying high transaction costs—do

not differ across class members, and a legal determination whether Defendants' policies are unjust will also apply with equal force to each class member." (emphasis added)).

Accordingly, predominance is met. *See id.* at *15-16 (finding predominance satisfied for unjust enrichment claims); *Pfaff,* 2010 U.S. Dist. LEXIS 104784, at *17 (same); *Kirkbride*, 2022 U.S. Dist. LEXIS 123530, at *31 (same).[9]

### 2. Classwide damages can be calculated by applying a formula to Cedar Fair's sales records.

"Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal" and is a "black letter rule." *In re Whirlpool*, 722 F.3d at 861 (internal quotes omitted); *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 428-29 (N.D. Ohio 2008) (Carr, J.) (individualized damages calculations do not defeat class certification).

This is especially true when damages can be calculated by applying a formula to defendant's sales records. *See Humphrey*, 2018 U.S. Dist. LEXIS 195811, at *13 ("Class wide damages resolution is also possible, because Defendants' records contain information detailing the fees charged to each class member."); *Schemmer v. ChartOne, Inc.*, 2007 U.S. Dist. LEXIS 45519, at *5 (N.D. Ohio June 22, 2007) ("questions of liability and damages do not require individual determinations for each class member. While the amount each individual was allegedly overcharged may vary, the same mathematical formula" can be used to calculate damages from defendant's records); 4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed.) (where a case is certified for liability and damages, "the class proponents can demonstrate that they have a common, classwide method for determining individual damages by using a variety of

---

[9] In its related motion to strike, Cedar Fair suggests that individualized issues defeat predominance for this class. *See* Dkt. 63. Those arguments are unpersuasive, for the reasons Plaintiffs explain in their opposition to that motion. *See* Dkt. 69.

techniques ranging from mathematical formulae to looking at the defendant's customer or sale records…"); 3 Federal Litigation Guide § 42.164 ("If a court can calculate damages by using a mathematical formula … the existence of individualized damage claims does not pose a barrier to certification"). All that is required is that any formula that a plaintiff uses to calculate damages is tied to Plaintiffs' "theory of liability." *Hicks,* 965 F.3d at 460.

For both classes, Plaintiffs can calculate—and have calculated—classwide damages by applying a formula to defendant's sales records.

<u>Consumer Protection Class</u>

The Consumer Protection Class seeks a refund of 2020 season pass fees proportional to the percentage of the 2020 season that Cedar Fair did not deliver. Todd Decl. ¶16. While individual damages may vary based on pass price, the formula is the same and the amounts can be determined from Cedar Fair records. *Id.* at ¶¶17-19. For example, if a park was closed for 50% of the promised 2020 season, impacted class members seek a refund of 50% of their purchase price.  In this way, Plaintiffs can calculate damages for each class member, using a common formula. *See id*. at ¶¶16-24. Plaintiffs can also calculate—and have calculated— classwide, aggregate damages. *Id*. at ¶24. Classwide, this class seeks aggregate damages of over ███████████████████████ on behalf of over ██████ passholders.[10] *Id*. ¶¶24, 13.

This damages calculation is tied to Plaintiffs' theory of liability. For liability, Plaintiffs contend that Cedar Fair misled reasonable consumers into believing that, if Cedar Fair did not provide the promised 2020 season, it would issue refunds proportionate to what it could not

---

[10] Cedar has promised to provide, but has not provided, sales data for the two Schlitterbahn parks (Galveston and New Braunfels). Plaintiffs will update their classwide calculations when that information is provided.  *See* Todd Decl. ¶24.

provide. And that is how Plaintiffs have calculated damages: in proportion to the 2020 season that Cedar Fair did could not provide.

Equitable Claims Class

The Equitable Claims Class paid for a 2020 season, but received no season at all. Accordingly, they simply seek a refund of their 2020 pass fees. Todd Decl. ¶¶23, 25.  The amount each class member paid—and thus the appropriate refund—is identified in Cedar Fair's sales data. *See* at ¶¶17-19. Plaintiffs can calculate damages for each class member by looking up what each person paid. *See id.* at ¶¶16-25. Plaintiffs can also calculate—and have calculated—classwide, aggregate damages. *Id.* at ¶25. Classwide, this class seeks aggregate damages of over ████████████████ on behalf of over ██████ passholders.[11] *Id.*  at ¶¶25, 15.

This damages theory is tied to Plaintiffs' theory of liability. For liability, Plaintiffs contend that Cedar Fair unjustly charged class members for a 2020 season, but then failed to provide any of the bargained-for season. And that is how Plaintiffs have calculated damages: a refund of the money that passholders paid for a season that Cedar Fair never provided.

In its motion to strike, Cedar Fair contends that certification is precluded by the need to examine whether, and to what extent, passholders used their 2021 pass. Dkt. 63 at 13. But as addressed in Plaintiffs' opposition, the factfinder could conclude that this is irrelevant to the core liability question (whether forcing the purchase of 2021 passes was unjust). *See* Dkt. 69 at 8-9. And if Cedar Fair contends that 2021 pass usage is a damages consideration, that cannot defeat certification. *In re Whirlpool*, 722 F.3d at 861 ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal" and is

---

[11] Some class members are members of both the Ohio Consumer Protection Class and Equitable Claims Class. For these class members, Plaintiffs are not seeking a double recovery. In other words, for these class members, Plaintiffs do not seek any more than the price these class members paid for their pass.

a "black letter rule.") (internal quotes omitted); *Cates,* 253 F.R.D. at 428-29 (Carr, J.) (individualized damages calculations do not defeat class certification). At trial, Cedar Fair can present its arguments that damages must account for 2021 usage. This, however, is not an issue that can prevent certification.

### 3.     A class action is superior.

To decide if a class action is superior, courts consider: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Here, all factors weigh in favor of certifying this class.

Consumers cannot sue individually. Because season passes generally about ███ (Todd Decl. ¶¶18-19), class members cannot practically bring individual cases.  "Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually.... [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Young,* 693 F.3d at 545 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (cleaned up).

No other cases. There is also no other pending lawsuit against Cedar Fair for these claims. This case is class members' only practical chance at achieving relief. *See Hendricks v. Total Quality Logistics, LLC*, 292 F.R.D. 529, 543 (S.D. Ohio 2013) (holding that superiority is met where "[t]here is no record of other similar litigation against [Defendant]."); *Powell v. Tosh*, 280 F.R.D. 296, 311 (W.D. Ky. 2012) (same).

<u>This forum is ideal</u>. Cedar Fair is based in Sandusky, and the parties agree that Ohio law governs all the claims. Answer ¶ 11; Dkt. 52 (Order) at 3; *see Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500, 512 (W.D. Mich. 1998) (superiority satisfied, in part because "[t]he legal claims asserted by class members are clearly subject to … [the forum state's] law]); *Trollinger v. Tyson Foods, Inc.*, 2006 U.S. Dist. LEXIS 74114, at *28 (E.D. Tenn. Oct. 10, 2006) (forum factor met where the court had "considerable familiarity with the…applicable law.").

<u>The class is manageable</u>. This is essentially the same consideration as predominance. *E.g., Hicks,* 965 F.3d at 464 (superiority satisfied because common issue predominate). Because predominance is satisfied, the class is manageable.

Under all factors, a class action is the superior way to resolve this case. In fact, without a class action, passholders have essentially no feasible way to seek relief.

## C. The Ohio Consumer Protection Class satisfies the prior notice requirement of R.C. § 1345.09(B).

This issue is fully addressed in Plaintiffs' opposition to Cedar Fair's motion for judgment on the pleadings. Dkt. 68.

In short, under the OCSPA, Plaintiffs can pursue a class action if Cedar Fair had prior notice that its ads were deceptive. R.C. § 1345.09(B). One way to show prior notice is to show that Cedar Fair violated a reasonably specific rule adopted by the Ohio Attorney General. *Id.;* R.C. § 1345.05 (B). Plaintiffs have evidence that Cedar Fair violated the following rule: O.A.C. 109:4-3-02 (D). This reasonably specific rule prohibits using inconspicuous and indirect hyperlinks to hide important terms and conditions. As described above, Cedar Fair hid key terms—the ones that it contends absolve it of all liability—behind an inconspicuous and indirect hyperlink. *See* Section II.B above. This meets the prior notice requirement for certifying OCSPA claims. *See* Dkt. 68.

**D.      The proposed classes are ascertainable.**

In addition to satisfying Rule 23, a putative class must be "sufficiently ascertainable." *Rikos,* 799 F.3d at 525. For a class to be ascertainable, "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Id.* at 525 (internal quotes omitted). Cedar Fair's pass sales records objectively show who is a member of each class. *See* Todd Decl. ¶¶13, 15. The proposed classes are ascertainable.

*       *       *

Plaintiffs have demonstrated that this case should proceed as a class action. The Court should certify both proposed classes and appoint Plaintiffs' counsel (Dovel & Luner and Dworken & Bernstein) as class counsel.

Date: February 1, 2024                    Respectfully submitted,

                                          */s/ Jonas Jacobson*
                                          Jonas Jacobson (CA 269912)
                                          jonas@dovel.com
                                          Simon Franzini (CA 287631)
                                          simon@dovel.com
                                          Dovel & Luner, LLP
                                          201 Santa Monica Blvd., Suite 600
                                          Santa Monica, California 90401
                                          Telephone: (310) 656-7066
                                          Facsimile: (310) 656-7069

                                          Richard M. Kerger (OH 0015864)
                                          rkerger@kergerlaw.com
                                          Kimberly A. Conklin (OH 0074726)
                                          kconklin@kergerlaw.com
                                          The Kerger Law Firm, LLC
                                          4159 N. Holland-Sylvania Rd. Suite 101
                                          Toledo, Ohio 43623
                                          Telephone: (419) 255-5990
                                          Facsimile: (419) 255-5997

26

Nicole T. Fiorelli, Esq. (#0079204)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391
(440) 352-3469 Fax
Email:  nfiorelli@dworkenlaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I certify that this motion adheres to the 30-page limit for dispositive motions in complex

cases, under the Local Rules.

*/s/ Jonas Jacobson*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2024, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jonas Jacobson*