IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Moneva Walker, *et al.*,                                   Case No. 3:20-cv-02176

       Plaintiffs,

    v.

Cedar Fair, L.P., *et al.*,                                       **ORDER**

       Defendants.

This is a putative class action arising out of the wholly cancelled or otherwise abbreviated 2020 season at Defendants Cedar Fair, L.P. and Cedar Fair Management, Inc.'s various amusement parks.

Plaintiffs, the putative class members, were 2020 season passholders at Defendants' amusement parks. They seek to obtain compensation for themselves and other similarly situated persons for the partial and/or complete closure, due to the Covid-19 pandemic, of Defendants' amusement parks.

Before me is Defendants' motion for partial judgment on the pleadings. (Doc. 61). Plaintiffs opposed the motion (Doc. 68), and Defendants filed a reply (Doc. 73).

For the reasons that follow, I deny Defendants' motion for partial judgment on the pleadings.

## Background

Defendants operate thirteen amusement parks in the United States and Canada. (Doc. 18, ¶ 1). *Via* Defendants' website, Plaintiffs purchased season passes, which provide unlimited access. (*Id.*, ¶¶ 15-19).

Due to the rise of the Covid-19 pandemic in 2020, Defendants did not open their parks at their usual opening dates. California's Great America, Valleyfair, and Canada's Wonderland never

opened. King's Dominion and Carowinds were closed for most of the season, opening only for a brief "Taste of the Season" event in November and December. Defendants closed all remaining parks for a substantial portion of the season (and imposed heavy restrictions when a park was open, *e.g.*, reservation requirements, and substantially restricted ride and attraction access). (*Id.*, ¶ 43).

At the time Defendants sold 2020 season passes, they posted on their websites the expected season dates for each park. (*Id.*, ¶ 23). The parks are generally open during weekends beginning in April or May, and then daily from Memorial Day until Labor Day. The parks typically have an approximately 130 to 140-day operating season. (*Id.*, ¶ 37).

Plaintiffs allege that Defendants refused to provide them with a refund for the portion of the regularly scheduled year that their parks remained closed. (*Id.*, ¶ 44).

Two of Plaintiffs' claims remain pending: (1) their Ohio Consumer Sales Practices Act ("CSPA") claims under OHIO REV. CODE ANN. §§ 1345.02 and 1345.03(A) (West 2024) for all Plaintiffs; and (2) equitable claims of unjust enrichment and money had and received for Plaintiff Mori as a subclass representative for those proposed class members who held season passes for parks which did not open during calendar year 2020. (Doc. 52, PgID. 737 (*Order Granting in Part and Denying in Part Motion to Dismiss*)). Only the CSPA claims are at issue in Defendants' motion and this Order.

Plaintiffs' claim under the CSPA alleges "Defendants acted as suppliers and committed unfair, deceptive, and/or unconscionable acts" regarding the sale of season passes by:

> promis[ing] unlimited park visits for the duration of the 2020 season (among other benefits). A reasonable consumer would believe that, if Defendants failed to provide the promised benefits, Defendants would return a proportionate amount of pass fees. Defendants misleadingly omitted or concealed that they would not return any pass fees even if they did not provide the promised pass benefits.

(Doc. 18, at ¶¶ 155–56).

2

Plaintiffs allege that Defendants violated OHIO ADMIN. CODE 109:4-3-02(D) by offering on their website "unlimited park visits without stating (much less clearly and conspicuously stating in close proximity) that they would not return any pass fees even if they did not provide the promised pass benefits." (Doc. 18, at ¶¶ 160–61).

To maintain their CSPA case as a class action, Plaintiffs must show that they satisfy the "prior notice" requirement codified in OHIO REV. CODE ANN. § 1345.09(B). The only issue before me in this motion is whether Plaintiffs have satisfied this requirement for maintaining a class action.

## Legal Standard

The same standard of review applies to both Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *Ross, Brovins, Oehmke, P.C. v. Lexis Nexis Grp.*, 463 F.3d 478, 487 (6th Cir. 2006). Only the timing of the motions differs.

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A motion for judgment on the pleadings "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 483 (6th Cir. 2020). In other words, when adjudicating a motion for judgment on the pleadings, a court cannot consider items attached to the motion or the opposition—it must look to the pleadings only, and any documents referenced in the pleadings that are central to the dispute. *Id.*; *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022); *and see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

3

**Discussion**

The CSPA, OHIO REV. CODE ANN. § 1345.09(B), authorizes a plaintiff to pursue a class action only if the plaintiff pleads that the defendant had "prior notice" that its advertisements or offers were deceptive.[1] *See Marrone v. Phillip Morris USA, Inc.*, 110 Ohio St. 3d 5, 7 (2006).

One way a plaintiff can plead prior notice is to allege that the defendant violated a "reasonably specific" rule adopted by the Ohio Attorney General promulgated under OHIO REV. CODE ANN. § 1345.05(B)(2).[2] *Id*.

OHIO REV. CODE ANN. § 1345.05(B)(2) authorizes the Attorney General to "[a]dopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02 and 1345.03 of the Revised Code." *Id*. at 10.

The Ohio Supreme Court explains the "reasonable specificity" requirement:

> A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice. To permit a generic rule to constitute prior notice for purposes of [OHIO REV. CODE ANN. §] 1345.09(B) would allow any previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice.

*Id*.

In the case *Marrone v. Phillip Morris USA, Inc.*, the plaintiffs filed a putative class action against Phillip Morris USA under the CSPA. They alleged that Phillip Morris fraudulently represented certain cigarettes as "light" to mislead smokers into believing light cigarettes delivered

---

[1] This Opinion and Order does not address whether Plaintiffs have met the requirements set forth in Federal Rule of Civil Procedure 23 for class certification. I will address Plaintiffs' pending motion under Rule 23 in a separate Opinion and Order.

[2] Another way that a plaintiff may plead prior notice is alleging that a defendant's conduct is substantially similar to conduct already found deceptive or unconscionable by a public Ohio court decision. OHIO REV. CODE ANN. § 1345.09(B); *Marrone, supra,* 110 Ohio St. 3d at 7–8. Plaintiffs are not asserting this theory.

less tar and nicotine than regular cigarettes. *Marrone*, *supra*, 110 Ohio. St. 3d at 6. In fact, when smoked by consumers, Phillip Morris's "light" cigarettes were designed to maximize, rather than decrease, the amount of nicotine delivered to smokers. *Id*. at 6–7.

Phillip Morris argued that the plaintiffs could not maintain a class action under the CSPA because Phillip Morris did not have prior notice that its act may be deceptive. *Id*. at 7. Phillip Morris argued that its alleged deceptive act or practice "must be industry- or conduct- specific for the notice to be meaningful and to give a supplier fair warning of conduct that violates the CSPA." *Id*. at 8. The plaintiffs contended that OHIO REV. CODE ANN. § 1345.09(B) "refers only to 'an act or practice' and does not require specificity." *Id*. The plaintiffs cited two cases and an attorney general rule that they believed gave Phillip Morris adequate notice that its manufacturing and labeling of light cigarettes violated Ohio law. *Id*.

The Ohio Supreme Court agreed with Phillip Morris, finding that the conduct described in the two cases and one attorney general rule the plaintiffs cited, which I discuss further below, failed to provide Phillip Morris with prior notice under the CSPA because "the cases did not involve the cigarette or tobacco industries" and "the industries and conduct in [the cases the plaintiffs cited] were too dissimilar to Phillip Morris's to have afforded Phillip Morris advance notice that its acts or practices had been declared deceptive under the CSPA." *Id*. at 9.

The first case the plaintiff in *Marrone* cited was *State ex rel. Celebreeze v. Hi-Lo Oil*, Franklin C.P. No. 85-cv-01-518 (Jan. 29, 1985). That case involved a defendant that falsely represented to customers that it was selling two different grades of gasoline from separate pumps, when in fact all the gas came from the same underground tank. Because the gasoline industry is not the tobacco industry, and is dissimilar from it, the *Marrone* Court held that Phillip Morris could not be on notice based on the trial court's determination in *Hi-Lo Oil*.

5

The second case the plaintiffs cited in *Marrone*, *Amato v. Gen. Motors Corp.*, 11 Ohio App. 3d 124 (1982), involved an automobile manufacturer that sold Oldsmobile vehicles with Chevrolet engines. The *Amato* court found that the tactic of selling a Chevrolet disguised as an Oldsmobile violated Ohio law. The plaintiffs in *Marrone* argued that the "bait and switch" prohibited in *Amato* should have put Phillip Morris on notice that it was prohibited from a "bait and switch" of cigarettes. The *Marrone* Court held that Phillip Morris could not be on notice based on the Ohio Court of Appeals' determination in *Amato* because motor vehicle parts are too dissimilar from cigarettes.

As to the attorney general rule, the plaintiffs in *Marrone* relied on OHIO ADMIN. CODE 109:4-3-10, which stated "it is a deceptive act or practice for a supplier to make any representations in the absence of a reasonable basis in fact." *Id*. at 10. Because that administrative rule "does not refer to any particular act or practice," the *Marrone* court stated that it is a "general rule" and "not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice."

In short, the *Marrone* court held that the acts or practices determined to be deceptive in *Highway Oil* (aka, *Hi-Lo*) and *Amato* were not "substantially similar" to the allegations against Phillip Morris. And additionally, OHIO ADMIN. CODE 109:4-3-10 is a "generic prohibition and does not refer to any specific act or practice," which also failed to put Phillip Morris on notice. *Id*.

Similar to the defendant in *Marrone*, Defendant here argues that the attorney general rule Plaintiffs cite is too generic and unspecific to put them on notice that their website may be considered deceptive.[3]

Plaintiffs here do not rely on the same attorney general rule that the *Marrone* Court found to be too generic and unspecific to constitute prior notice. That rule was OHIO ADMIN. CODE 109:4-

---

[3] Again, Plaintiffs here do not allege that Defendants had notice in the form of a state court determination. They rely instead only on OHIO ADMIN. CODE 109:4-3-02(D).

6

3-10 ("Subsection 10"). The rule plaintiffs rely on here is OHIO ADMIN. CODE 109:4-3-02(D) ("Subsection 02(D)"), which was not yet in effect in 2006 when *Marrone* was decided. (*See* OHIO ADMIN. CODE ANN. § 109:4-3-02 (2006) (Doc. 68-1, PgID. 928)).

Subsection 02(D) prohibits using inconspicuous and indirect hyperlinks to hide important terms in online ads. It states:

> It is a deceptive act or practice in connection with an offer made on the internet, to make any offer without stating clearly and conspicuously, in close proximity to the words stating the offer, any material exclusions, reservations, limitations, modifications, or conditions. Disclosures should be as near to, and if possible on the same screen, as the triggering offer. If scrolling or a hyperlink is necessary to view the disclosure, the advertisement should guide consumers with obvious terms or instructions to scroll down or click on the hyperlink. Hyperlinked disclosures should lead directly to the disclosed information and not require scrolling or clicking on any additional hyperlinks.

The Ohio courts have not yet opined on whether it considers Subsection 02(D) to be a "generic" provision or whether it is "industry- or conduct- specific for the notice to be meaningful and to give a supplier fair warning of conduct that violates the CSPA." *Marrone*, *supra*, 110 Ohio. St. 3d at 8. Therefore, I must analyze the rule without precedential guidance from the State of Ohio courts on this point.

Subsection 02(D) is plainly and on its face not an "industry specific" rule. It says nothing about a particular industry to which it would have a limited application. Whereas other portions of the Ohio Administrative Code specify an applicable industry. For example, OHIO ADMIN. CODE 109:4-3-15 applies to sellers of motor vehicle rust inhibitors, which is undoubtedly an industry-specific group. Subsection 02(D), which does not specify an industry, applies across consumer transactions generally.

While not industry-specific, Subsection 02(D) is conduct-specific. As discussed, *Marrone* requires only that the defendant's conduct be "substantially similar to an act or practice that was previously declared to be deceptive." *Marrone*, *supra*, 110 Ohio St. 3d at 13.

7

The conduct Subsection 02(D) specifically cautions against is disclosures in online consumer sales that are not "near to" or "on the same screen" as the "triggering offer." OHIO ADMIN. CODE 109:4-3-02(D). It cautions specifically regarding "scrolling" or a "hyperlink" for viewing a disclosure. *Id*. This is a specific description of the type of conduct the CSPA prohibits. And, although the rule applies generally to "consumer transactions" involving a "consumer" and a "supplier" as defined in the CSPA, its directive is not so generic such that suppliers engaging in online sales would not know what to do to comply.

Plaintiffs allege that Defendants' website advertised its 2020 season pass as providing consumers "Unlimited Visits" to the park. (*See* Doc. 18, PgID. 169). During the online checkout process, purchasers of the season pass would have to click on a hyperlink labeled "Terms and Conditions" as a first step in reaching the disclosures related to the season pass. (*Id*., pgID. 171). Then, the "Terms and Conditions" link would lead to a separate webpage containing another hyperlink labeled "Season Pass Terms." When pass purchasers clicked on that hyperlink, (the hyperlink within the hyperlink) they could find Defendants' material exclusions, reservations, limitations, modifications, or conditions.

Defendants do not dispute that these terms and conditions were not "near to, and if possible on the same screen, as the triggering offer." OHIO ADMIN. CODE 109:4-3-02(D). Once Defendants chose to use a hyperlink to set forth the terms and conditions of the offer, Defendants were on notice of Subsection 02(D)'s specific requirement that they "should guide consumers with obvious terms or instructions to scroll down or click on the hyperlink." *Id*. Defendants were also on notice that, when using hyperlinks, the rule requires that, "[h]yperlinked disclosures should lead directly to the disclosed information and not require scrolling or clicking on any additional hyperlinks." *Id*.

8

Plaintiffs' complaint lays out, using descriptions and pictures from Defendants' website, that to view the terms and conditions of the sale in 2020, the purchase process contained the two hyperlinks described above. Plaintiffs further allege that in 2020, the hyperlink "is not even bolded, underlined, or colored, to indicate it is clickable." (Doc. 68, PgID. 923).

These allegations satisfy Plaintiffs' obligations.

In *Martin v. Lamrite West, Inc.*, No. 105395, 2017 WL 4548333 (Ohio Ct. App. Oct. 12, 2017), the Ohio court of appeals found that another sub-section of the administrative code, OHIO ADMIN. CODE 109:4-3-12 ("Subsection 12"), was specific enough to constitute prior notice that the defendant's out-of-store advertisements constituted a deceptive or unconscionable act. *Id*. at *3. Thus, the plaintiffs in that case were permitted to qualify for a class action under the CSPA.

Subsection 12 is not the same as Subsection 02(D). And, as Defendants point out in their Reply, the construction of Subsection 12 is different from Subsection 02(D), not least because Subsection 12 states up front "This rule is designed to define with reasonable specificity certain circumstances in which a supplier's acts or practices in advertising price comparisons are deceptive…" OHIO ADMIN. CODE 109:4-3-12. That Subsection 02(D) does not contain similar language is not decisive, particularly since the language in Subsection 02(D) is specific.

I am persuaded that, as the court found in *Martin*, an attorney general rule promulgated under the CSPA need not be industry-specific to satisfy the prior notice requirement, so long as the rule is content-specific enough that the plaintiff can show that the defendant's conduct was substantially similar to the act or practice declared to be deceptive. *See Martin*, *supra*, 2017 WL 4548333 at *3. (*See* Doc. 68, PgID. 921). As discussed above, Subsection 02(D) is content and conduct-specific enough to satisfy the CSPA.

9

Defendants urge me to pay particular attention to the fact that two federal decisions found that Subsection 02(D) failed to satisfy prior notice. (Doc. 73, PgID. 970). Neither case is controlling nor are they persuasive.

First, in *Ewalt v. GateHouse Media Ohio Holdings II, Inc.*, No. 19-cv-4262, 2021 U.S. Dist. LEXIS 40258 (S.D. Ohio March 4, 2021), the entirety of the court's discussion regarding subsection 02(D) is as follows:

> Here, Plaintiffs allege that several sections of the Ohio Administrative Code (109:4-3-02(A)(1), 109:4-3-02(C), 109:4-3-02(D), 109:4-3-03(B)(1), and 109:4-3-09(B)) provided GateHouse Ohio with notice that its purported conduct violates the OCSPA. (ECF No. 42, ¶¶ 227–234.) But none of these suffices. "A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice, *Marrone*, 2006-Ohio-2869 ¶ 23, 110 Ohio St. 3d 5, 850 N.E.2d 31, and, here, the referenced code sections prohibit generic conduct rather than particular acts or practices. These general prohibitions do not put GateHouse Ohio on notice that its conduct purpor[edly] violates the OCSPA. Moreover, Plaintiffs do not allege sufficient facts that could allow [the defendant] to infer that Gatehouse Ohio violated one of the Code provisions. Plaintiffs fail to allege they were damaged by any purported violation of the advertising regulations that they cite.

*Id*. at *54.

I do not find *Ewalt* persuasive because there, the Court did not specifically or meaningfully discuss Subsection 02(D). Rather, it lumped multiple subsections together and summarily declared them general. Nor did the plaintiff in *Ewalt* evidently make any relevant factual allegations, unlike what Plaintiffs have set forth here. Accordingly, I reject Defendants' argument that *Ewalt* is decisive.

I also reject Defendants' argument that *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961 (S.D. Ohio 2022) controls. *Miranda* summarily rejected that 4-3-02(A)(1), (A)(2) or (D) provide prior notice because they are too generic. *Miranda* cited *Nicols v. R.J. Reynolds Tobacco Co.*, Summit C.P. 99-cv-11-4539 (Aug 11, 2000) as its basis. *Id*. at 978. *Nicols*, however, is a court opinion from 2000. Subsection 02(D) was not promulgated at that time. *See* Ohio Admin. Code 109:4-3-

10

02 (West 2000). Instead, the *Nicols* court analyzed a previous version of 109:4-3-02; one which did not include Subsection 02(D). Accordingly, I need not follow *Miranda*.

At this stage in the litigation, Plaintiffs have satisfied that Defendants had prior notice of the Attorney General rule. This is not to say that Plaintiffs will ultimately prevail on their Rule 23 class certification motion; rather, this ruling is limited to the CSPA's prior notice requirement only. Having satisfied that Defendants were on notice, Plaintiffs are not barred from proceeding as a putative class.

## Conclusion

It is, therefore, ORDERED THAT:

Defendants' motion for partial judgment on the pleadings (Doc. 61) be, and the same hereby is, denied.

The Clerk is directed to schedule a status/scheduling conference following this Order.

SO ORDERED.

*/s/James G. Carr*
Sr. U.S. District Judge

11