**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **MONEVA WALKER, et al.,** | CASE NO. 3:20 CV 2176 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **CEDAR FAIR, L.P., et al.,** | **MEMORANDUM OPINION AND** |
| Defendants. | **ORDER** |

### INTRODUCTION

Pending before the Court is Plaintiffs' Motion to Add Class Representatives, Amend the Complaint, and Modify the Court's Certification Order. (Doc. 140). Defendants opposed (Doc. 146), and Plaintiffs replied (Doc. 148). This Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1132(d)(2)(A). As set forth below, the Court grants in part and denies in part Plaintiffs' Motion.

### BACKGROUND

<u>Plaintiffs' Underlying Substantive Claims</u>

Plaintiffs purchased season passes of varying tiers to Defendants' amusement parks for the 2020 operating season. (Doc. 18, at 5). Contrary to the promise of "unlimited visits to the relevant park" in exchange for purchasing a season pass, the outbreak of the COVID-19 virus caused Defendants to shorten the 2020 operating season and, at some parks, cancel it entirely. *Id.* at 1–6. When Defendants closed or limited access to their parks, they "did not provide refunds" to Plaintiffs and similarly situated season pass purchasers. *Id.* at 17. While Defendants announced that a 2020 season pass would be honored for the 2021 operating season, Plaintiffs maintain "this

is not what passholders paid for, and was contrary to the essential terms" of the season pass agreement. *Id.* at 18.

Plaintiffs' operative Complaint states claims for breach of contract, unjust enrichment, money had and received, and claims arising under the consumer protection laws of various states. *See id.* at 23–34. Defendants first moved for judgment as a matter of law regarding the applicability of Ohio law to this dispute, including Ohio's state consumer protection regime. *See* Doc. 19. Plaintiffs eventually conceded this point, meaning the only live claims remaining were for breach of contract, unjust enrichment, money had and received, and claims arising under the Ohio Consumer Sales Practices Act ("OCSPA"). *See* Doc. 27, at 2. Further, Plaintiffs agreed "[t]o streamline and expedite this case" by stipulating "that Ohio law applies to all claims currently asserted." *Id.* As a result of this concession, Plaintiffs' claims whittled down further.

While the present case progressed, the Ohio Supreme Court issued a decision in *Valentine v. Cedar Fair, L.P.*, 202 N.E.3d 704 (Ohio 2022), which resolved under Ohio law similar substantive claims relating to the closure of Defendants' parks in 2020. There, the court determined the plaintiff did not retain valid claims for unjust enrichment and breach of contract, as the season pass purchased was a "revocable license" which guaranteed the purchaser admittance to the relevant park subject to Cedar Fair's "right to adjust its dates of operation for any reason." *Id.* at 186. Because the license was revocable, the failure to open for portions of the 2020 season spoke only to the sufficiency of the consideration offered in exchange for such license. *Id.* at 186–87. Because courts generally "may not inquire into the adequacy of consideration, which is left to the parties 'as the sole judges of the benefits or advantages to be derived from their contracts,'" the Ohio Supreme Court affirmed the dismissal of the plaintiff's breach of contract and unjust enrichment claims. *Id.* at 187 (quoting *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012)).

After *Valentine*, Defendants filed a renewed motion to dismiss targeting Plaintiffs' breach of contract, unjust enrichment, money had and received, and OCSPA claims. *See* Doc. 42. The Court[1] dismissed all breach of contract claims retained by Plaintiffs and further dismissed the unjust enrichment and money had and received claims with respect to all Plaintiffs except named Plaintiff Noelani Mori. (Doc. 52, at 12). Importantly, the park to which Mori purchased a season pass never opened, meaning she "plausibly allege[d] that she did not receive the benefit of her bargain" for a revocable license when compared to the named plaintiff in *Valentine*, whose park did open for a limited number of days during the 2020 season. *Id.* at 11–12. Thus, at the time Plaintiffs moved for class certification, the only claims before the Court were (1) the statutory OCSPA claims and (2) unjust enrichment and money had and received claims possessed solely by named Plaintiff Mori.

Certification of OCSPA & Equitable Claims Classes

Subject to *sua sponte* modifications, the Court granted named Plaintiffs' Motion for Class Certification. (Docs. 76, 117). The Court first certified the OCSPA Class, which Judge Carr assigned the following definition:

> This class asserts an Ohio Consumer [Sales] Practices Act ("OCSPA") claim. This claim alleges that Cedar Fair's ads failed to comply with Ohio law relative to notice of exclusion and disclaimers.
>
> As a result of limited access due to COVID-19 related shutdowns, a 2020 unlimited season pass purchaser would have expected a refund of the difference between the pass price of the 2020 expected season and the value of the 2020 season the purchaser actually received.

(Doc. 117, at 2). Within this class, the Court *sua sponte* crafted and certified three subclasses based on the type of season pass each named Plaintiff and putative class member purchased. Those

---

1. This case was originally assigned to now-inactive Senior District Judge James G. Carr. It was reassigned to the undersigned in March 2025.

subclasses were: "(a) Regular Summer/Season Pass holders to any single" park among Cedar Fair's multiple theme parks, "(b) Gold Pass holders to any single" such park, and "(c) Platinum Pass holders" who retained the right to access more than one of Cedar Fair's parks. *Id.* at 2–3.

Next, the Court granted Plaintiffs' Motion for Certification with respect to the putative Equitable Claims Class.[2] Judge Carr adopted the following definition for the Equitable Claims Class:

> This class asserts unjust enrichment and money had and received claims on behalf of passholders to parks that never opened in 2020. These parks are California's Great America, Canada's Wonderland, and Valleyfair. The claims allege that it was unjust for Cedar Fair to take the money that passholders paid for 2020 passes but provide no bargained-for consideration in return. Plaintiffs in this class, where parks were completely closed, would be entitled to a full refund.

(Doc. 117, at 2–3). Again, Judge Carr *sua sponte* crafted and certified subclasses for the Equitable Claims. Those included: "(a) Summer/Season Pass Holders to [parks that never opened]," and "(b) Gold Pass Holders to [parks that never opened]." *Id*. Platinum passholders were excluded from the Equitable Claims Class. *Id.*

After defining the scope of each class and subclass, the Court proceeded to outline certain definitional exclusions which applied across both the OCSPA and Equitable Claims Class. In effect, if an individual fell within the scope of an exclusion, they would no longer be a member of the certified classes. The Court excluded:

---

2. This Court notes it is a misnomer to label Plaintiffs' unjust enrichment and money had and received claims as "equitable." Quasi-contract or "unjust enrichment" claims are legal, not equitable. *See* Samuel L. Bray, *A Catalog of Legal and Equitable Remedies*, at 3 n.19, available at https://ssrn.com/abstract=5378666 ("In 1900 this body of [restitutionary] law was usually called 'quasi-contract,' and in 2000 it was usually called 'unjust enrichment.' Here there is no separation between the substantive claim and the remedy, no moment of remedial choice: a plaintiff who makes a successful claim for (legal) restitution receives as the remedy (legal) restitution."). Similarly, "[a]n action for money had and received, although governed by equitable principles, is an action at law." *Williamson v. Stallone*, 905 N.Y.S.2d 740, 753 (N.Y. 2010). For simplicity's sake, however, the Court declines to disturb the label assigned to the Equitable Claims Class.

4

(1) any 2020 unlimited season passholder who received a refund; (2) any passholder who used his or her 2020 season pass at any time, and for any reason, during Defendants' 2021 operating season; (3) any Judge or Magistrate Judge presiding over this action and the members of their family; (4) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current employees, officers and directors; (5) persons who properly execute and file a timely request for exclusion from the class; (6) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (7) Plaintiffs' counsel and Defendants' counsel; (8) the legal representatives, successors, and assigns of any such excluded persons.

*Id.* at 5. After outlining these definitional exclusions, the Court then conducted its Rule 23(a) and (b)(3) analysis, finding the putative class representatives put forth by Plaintiffs to be adequate and in possession of typical claims. *Id.* at 10–12. The Court further determine the putative classes satisfied Rule 23(a)'s numerosity and commonality requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements. *Id.* at 10–15.

Consequences of Certification

While achieving their initial goal of class certification, the Court's certification order nevertheless created issues for Plaintiffs, which the Motion presently before the Court seeks to redress. First, the Court's definitional exclusions for "any passholder who received a refund" and "any passholder who used his or her 2020 season pass at any time, and for any reason, during Defendants' 2021 operating season," *id.* at 5, excluded from the OCSPA Class all named Plaintiffs the Court certified as representatives of the OCSPA Class but for Mandi Stewart. Once Mandi Stewart withdrew as a representative of the OCSPA Class and as a named Plaintiff (Doc. 139, at 1), the OCSPA Class was left entirely without class representatives. *Accord* Doc. 140, at 2 ("The Court's [definitional] modifications excluded all proposed class representatives, expect for Mandi Stewart, who has since such time withdrawn.").

5

Second, the Court's definitional modifications similarly excluded named Plaintiff Mori, who was the sole named Plaintiff offered and certified as a representative of the Equitable Claims Class. *See* Doc. 76, at 8; Doc. 146, at 26. Compounding the difficulty, however, is the fact that the Court previously dismissed all other equitable claims as to all named Plaintiffs other than Mori after the Ohio Supreme Court's decision in *Valentine*. In effect, then, not only was the Equitable Claims Class left without a representative, but this lawsuit was also left without a named Plaintiff who retains any equitable claims against the Defendants.

Defendants next sought approval from the Sixth Circuit to pursue an interlocutory appeal of the Court's certification order. *See* Doc. 136-2; Fed. R. Civ. P. 23(f). The Sixth Circuit denied that request, determining the certification order and its consequences, including depriving the certified classes of adequate representatives, did not raise "novel or unsettled questions of law." *In re Cedar Fair, L.P., et al.*, No. 24-0305, Doc. 9, at 2 (6th Cir. June 27, 2025). The court relied on Eleventh Circuit authority indicating it is permissible to "substitute new class representatives if the named plaintiffs lose their standing to serve as representatives of certified classes and leave one or more classes without a representative." *Id.* (citing *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1339 (11th Cir. 2003)). Whether such a move was proper in this particular case, however, remained "entirely fact-bound at [that] stage" of the proceedings. *Id.* Plaintiffs' Motion seeking the addition of new putative class representatives as parties followed. *See* Doc. 140, at 8–10.

### DISCUSSION

Plaintiffs' Motion proposes three alternative methods for reaching a single result. Primarily, Plaintiffs rely on *Birmingham Steel* and *Lynch v. Baxley*, 651 F.2d 387 (5th Cir. 1981) for the proposition that they "must be given an opportunity to add suitable class representatives"

6

after the Court's certification order excluded the certified representatives in order "[t]o protect the interests of unnamed class members." (Doc. 140, at 8–10). To reach such a result, Plaintiffs suggest this Court may:

1. Utilize its equitable authority to amend the class certification order to include new class representatives without adding the class representatives as parties to the suit.

2. Allow Plaintiffs to amend their Complaint pursuant to Rule 15 to add new parties as putative class representatives.

3. Directly add the new proposed class representatives as parties to the suit pursuant to Federal Rule 21.

(Doc. 140, at 11–13). Finally, Plaintiffs argue the Court should modify the definition of the Equitable Claims Class to include those individuals who purchased their season pass in-person. *Id.* at 13–14. In opposition, Defendants launch numerous attacks on the Court's original certification order as well as Plaintiffs' Motion. Primarily, Defendants mount a jurisdictional challenge by claiming Plaintiffs lack standing to add parties and substitute them as class representatives. *See* Doc. 146, at 16–24 ("A prerequisite to Plaintiffs' Motion is standing and jurisdiction. For reasons stated below, Plaintiffs can establish neither.").

If the Court does retain jurisdiction to adjudicate this dispute, Defendants raise three separate merits arguments. First, without bringing a motion for reconsideration, Defendants argue the Court erred in certifying classes and subclasses that lacked adequate representatives with claims typical of class members, as the certified representatives were definitionally excluded from the class they purported to represent. *See id.* at 25–27. Second, Defendants contend applicable statutes of limitations bar Plaintiffs from amending their Complaint or adding new parties. *See id.* at 32–34. Finally, Defendants argue Plaintiffs' request to modify the Equitable Claims Class's

7

definition should be denied on statute of limitations, commonality, and predominance grounds. *See id.* at 34–40.

In an attempt to simplify its analysis, the Court proceeds in the following steps. First, the Court resolves Defendants' jurisdictional challenges, finding it retains jurisdiction to adjudicate Plaintiffs' Motion both with respect to the OCSPA Class and the Equitable Claims Class. Next, the Court evaluates the merits of Plaintiffs' Motion, finding it proper to grant Plaintiffs' Motion to Amend its Complaint pursuant to Federal Civil Rule 15. To assuage any standing concerns with respect to the Equitable Claims Class, the Court construes Plaintiffs' Motion to add new parties as class representatives as a motion to intervene on behalf of Equitable Claims Class members unnamed in Plaintiffs' Second Amended Complaint. As contemplated by Plaintiffs' proposed Third Amended Complaint, these intervening parties will join such Complaint as named Plaintiffs. *See* Doc. 140-1, at 3–6, 21.

<u>Standing</u>

"Standing is 'the threshold question in every federal case.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). In order to assert jurisdiction over the merits of this dispute, the Court must fulfill its "independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). To satisfy Article III's standing requirement, a plaintiff "must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coyne*, 183 F.3d at 494. Thus, only when this Court is convinced Plaintiffs have met their burden to properly invoke Article III jurisdiction may it proceed to the merits of their Motion.

Defendants first challenge Plaintiffs' standing on grounds related to former named Plaintiff Mandi Stewart's status as "next friend" of her daughter, Arianna Mickle. The Court previously determined Stewart could serve in such a role, permitting her to bring claims on her daughter's behalf based on Stewart's "capacity as a purchaser of her daughter's pass." (Doc. 117, at 15). Defendants argue "Stewart never had standing to act as a class representative, and Mickle was never a party in this case. This Court should reject arguments premised on either of their statuses as class representatives." (Doc. 146, at 22). Defendants assert this argument applies equally to both the OCSPA and Equitable Claims Classes. *See id.* Finally, Defendants assert the Court's decision to allow Stewart to proceed as "next friend" of Mickle constituted "clear legal error" in light of Mickle surpassing the age of majority and a lack of notice to Defendants regarding Stewart's status as "next friend." *See* Doc. 146, at 18–20 ("Stewart was not a proper representative under Civil Rule 17, and thus lacked standing to bring claims based on injuries to another adult.").

Plaintiffs correctly note, however, that the Court need not revisit whether Stewart was a proper next friend of Mickle or whether Stewart lacked standing to pursue her individual and class claims at the outset of the case, when seeking certification, and now. *See* Doc. 148, at 15–16. At the outset of this case and at certification, as explained further below, there existed other Plaintiffs who retained standing as class members to pursue their individual and class claims on behalf of both the OCSPA and Equitable Claims Class. Further, Mickle and Stewart have both withdrawn from this case, meaning it is immaterial to the standing inquiry with respect Plaintiffs' present Motion whether they retained standing to sue *ab initio*. *See id.* Thus, the Court proceeds to analyze its jurisdiction with respect to the certified OCSPA Class, the Equitable Claims Class, and the parties presently before the Court.

*OCSPA Class Standing*

Plaintiffs retain standing to bring, and this Court has jurisdiction to adjudicate, the present Motion as applied to the OCSPA Class. Importantly, standing in class actions is not restricted to those individuals the class members choose to put forth as named Plaintiffs and class representatives. Rather, all individuals who are "a member of the class" and will thus be "bound by the judgment" obtained thereby pose "no question" as to whether they satisfy the "three requirements" of Article III standing. *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002). Thus, so long as an individual who retains an OCSPA claim and is a member of the OCSPA Class is presently before the Court, that individual has standing to bring the present Motion to add parties and substitute new class representatives.

> Plaintiffs' operative Complaint plead their OCSPA claim in the alternative:
>
> Plaintiff Mandi Stewart alleges this claim individually and on behalf of the proposed Ohio Parks Subclass. In the alternative, all named Plaintiffs allege this claim individually and on behalf of the proposed Cedar Fair Season Passholder Class. As used in this claim, "Plaintiffs" collectively refers to the named Plaintiffs, the Ohio Parks Subclass, and the Cedar Fair Season Passholder Class. (Doc. 18, at 33).

(Doc. 18, at 33). As previously explained, Plaintiffs voluntarily relinquished all consumer protection claims other than those arising under the OCSPA. *See* Doc. 27, at 2. Further, in their motion for class certification, Plaintiffs offered multiple named Plaintiffs, not just Mandi Stewart, as putative representatives for the OCSPA Class. *See* Doc. 76, at 22. These putative OCSPA Class representatives included individuals such as Holly Poteat and Jonathan Brown who had previously asserted consumer protection law claims under North Carolina law. *See* Doc. 18, at 19.

Taken in combination, these developments indicate Plaintiffs' alternative pleading was triggered upon waiver of the consumer protection claims under the laws of states other than Ohio. As a result, each named Plaintiff in this action retains an OCSPA Class claim and is a member of

10

the OCSPA Class unless covered by one of the definitional exclusions included in the certification order. *See* Doc. 117, at 2 (defining the OCSPA Class as comprised of those individuals "assert[ing] an Ohio Consumer Practices Act ('OCSPA') claim"). This group of qualified individuals includes named Plaintiffs Foshia, Walker, Poteat, and Shepperson, whom were never offered as putative class representatives but remain as named Plaintiffs in this action, as the Court has received no indication these named Plaintiffs were covered by the Court's definitional exclusion for passholders that used their 2020 season passes during the 2021 season or received a refund for their 2020 passes. Again, even if these named Plaintiffs were not offered as class representatives, they retain standing as *members* of the OCSPA Class with a valid OCSPA Class claim. *See Devlin*, 536 U.S. at 7; *cf. Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) ("[T]he court continues to have jurisdiction to hear the merits of the action if a controversy between any class *member* and the defendant exists." (emphasis added)).

Thus, the fact that the OCSPA Class presently has no class representatives, and perhaps never had an adequate representative given Stewart's disputed status as a "next friend," is irrelevant to the standing inquiry. What matters is that members of the OCSPA Class retaining valid OCSPA claims filed the present Motion, the motion for class certification, and this suit itself. That some other named Plaintiffs lost standing as a result of the Court's definitional exclusions does not impact that reality. *See id.* at 399–400 (explaining that, while "the proposed class representative [must] have standing at the time of class certification," their claim becoming moot after certification does not require dismissal). Foshia, Walker, Shepperson, and Poteat, as well as the OCSPA members Plaintiffs seek to join to this suit as substitute class representatives, have a clear, legally cognizable interest in their OCSPA claim and their status as members of the OCSPA Class. They thus have standing to move to substitute new class representatives for the OCSPA

11

Class and, as identified by Plaintiffs, the standing of Mandi Stewart to bring the present Motion is irrelevant to whether the Court may permit substitution. *See* Doc. 148, at 15–17.

*Equitable Claims Class Standing*

As previously outlined, the Court's certification order, due to its definitional exclusion of named Plaintiff Mori, left the Equitable Claims Class without a representative and divested this suit entirely of a named plaintiff retaining any equitable claim. In effect, then, to the extent this Motion is brought on behalf of the existing named Plaintiffs in this action,[3] it is brought by individuals who are not members of the Equitable Claims Class, will not be bound by a judgment on the Equitable Class claims, and generally have no stake in the resolution of such claims. *See Devlin*, 536 U.S. at 7. This disconnect between the parties bringing the present Motion with respect to the Equitable Claims Class and those that seek to gain from the Court granting it presents a tricky standing issue.

Generally, an existing party to a case will lack standing to bring a motion asserting the rights of a third party whom they do not formally act on behalf of. *See, e.g.*, *Mills v. Hausmann-McNally, S.C.*, 992 F. Supp. 2d 885, 892–94 (S.D. Ind. 2014) (holding the defendant lacked standing to bring a motion to disqualify the plaintiff's attorney absent a conflict of interest or any indication the defendant was harmed by the alleged attorney misconduct). Whether framed as a matter of Article III or "prudential" standing, the injury requirement mandates a movant "must 'assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 422 U.S. at 499); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (declining to resolve whether the

---

3. The present Motion was filed on behalf of named Plaintiffs, Brown, Foshia, Mori, Poteat, Shepperson, Stewart, and Walker. However, including Stewart in this list is inaccurate following her withdrawal as a named Plaintiff in this suit. *See* Doc. 139.

assertion of third-party interests is best understood as a matter of Article III standing, prudential standing, or the existence of a cause of action).

Asserting the interests of third parties, however, is what the present movants seek to do, in effect. Plaintiff Mori, despite retaining equitable claims, is not a member of the Equitable Claims Class by operation of the definitional exclusions and, to the extent she and the other named Plaintiffs move to substitute new representatives for such class, they so move only on behalf of third parties with which they share no legally cognizable interest. While Plaintiffs are correct to identify the Equitable Claims Class "acquire[d] a legal status separate from the interest asserted by the named plaintiff" upon certification, that is not the operative question. *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). Rather, the question is whether Mori and the other named Plaintiffs, who remain definitionally excluded from the Equitable Claims Class and do not share in its distinct legal interest, may move *on behalf of* the Equitable Claims Class and its members to substitute representatives for the same.

Plaintiffs identify a case permitting substitution in nearly identical circumstances. In *Sloan v. General Motors, LLC*, the plaintiffs brought numerous class claims sounding in consumer protection and warranty law. 2020 WL 5517244, at *2–4 (N.D. Cal). The court granted certification with respect to multiple classes segregated by the state law governing each claim. *Id.* at *4. However, after certification of the California Class, the parties "discovered that the individual who represented the California Class (Raul Siqueiros) was no longer an adequate representative." *Id.* at *1. Importantly, like in the present case, Siqueiros did not become inadequate because of a change in the applicable facts on the ground. Rather, the certification order itself defined him out of the class, as "the [c]ourt restricted the definition of Class Vehicles to only those vehicles manufactured *on or after* February 10, 2011[,]" such that "the named California

13

Plaintiff, Raul Siqueiros (whose car was manufactured *prior* to that date), could no longer serve as class representative." *Id.* at \*4. Siqueiros was the only named plaintiff in *Sloan* who was member of the California Class. Upon operation of the court's definitional exclusion, then, the California Class was left without its representative, and the case was without a plaintiff who retained a California Class claim. *Id.* Nevertheless, the *Sloan* court permitted the remaining plaintiffs to substitute new plaintiffs to serve as representatives for the California Class, explaining "Mr. Siqueiros did not lack standing *ab initio*. He lacked standing as a class representative only when this Court certified a class using a narrowed definition of the class. . . . [T]here are readily available and identifiable members of the class who can be substituted into this lawsuit." *Id.* at \*8.

Other cases similarly provide arguable support for permitting Plaintiffs to amend their complaint in light of the inadequacy of existing representatives. First, in *Lynch v. Baxley*, plaintiffs subject to involuntary civil commitment challenged the constitutionality of Alabama's commitment procedures. 651 F.2d 387, 387 (5th Cir. 1981). The district court certified a class of civilly committed individuals in Alabama and granted relief. *Id.* at 387. Alabama later enacted new law governing civil commitments, which the same plaintiffs again sought to challenge. However, "the original plaintiffs no longer [had] standing" as they had either been released from confinement or their status was unknown. *Id.* at 388. Nevertheless, the Fifth Circuit found the class qua class retained live claims despite the fact that the intervening legislation narrowed the class. *Id.* The Fifth Circuit held the district court thus committed error when it dismissed the case prior to allowing the absent class members with live claims to become parties to the suit through amendment of the complaint or intervention. *Id.* Next, as the Sixth Circuit itself recognized in this case, the Eleventh Circuit's approach in *Birmingham Steel* would permit "class members" to move to "substitute new class representatives if the named plaintiffs lose their standing to serve as

14

representatives of the certified classes and leave one or more classes without a representative." *In re Cedar Fair, L.P.*, No. 24-0305, at 2 (6th Cir. June 27, 2025).

None of these cases directly address the particular standing issue arising from the exclusion of Mori and all other named Plaintiffs from the Equitable Claims Class. However, the Court finds them persuasive insofar as they establish the general principle that where there are "readily available and identifiable members of the class who can be substituted into this lawsuit," *Sloan*, 2020 WL 5517244, at *8, and "[e]fficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the [class] interests," *Lynch*, 651 F.2d at 387 n.1, permitting substitution of class representatives is proper. Thus, despite the identified mismatch between those individuals that brought the present Motion and those whose interests it promotes, the Court finds it proper to grant the relief sought. That is, the Court will permit members of the Equitable Claims Class, including Jessica Hunt, Tracy Miller, Chante Hammond, and Richard Davis to join this suit as Plaintiffs. *See* Doc. 140-1, at 3–4, 19.

To rectify the mismatch between the moving parties and the beneficiaries of their motion, the Court construes Plaintiffs' Motion as one seeking intervention on behalf of the previously unnamed members of the Equitable Claims Class. An intervention-based approach is common in circumstances where a named plaintiff ceases to be an adequate representative of unnamed class members' interests. *See, e.g.*, *Eckert v. Equitable Life Assurance Soc'y*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (explaining "Rule 24(a) allows intervention as of right 'whenever it appears that the named representative canno[t] adequately represent the interests of the class.'") (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 147 F.R.D. 60, 62 (S.D.N.Y. 1993)). Such an approach directly follows from the Supreme Court's holding in *Devlin* that unnamed class members have standing to challenge the decisions of the district court with respect to their class.

15

*Devlin*, 536 U.S. at 6–7. Thus, where, as here, no named party is able to adequately represent the interests of the Equitable Claims Class (particularly because no named Plaintiff is a member of that class), absent, previously unnamed members of the class may intervene. *Grainger v. Ottawa Cnty.*, 90 F.4th 507, 514 (6th Cir. 2024) ("To be sure, courts allow intervention by absent members of pre-certification or certified class actions when the intervenors have shown that the named plaintiff does not adequately represent their interests."); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) ("[M]embers of a class have a right to intervene if their interests are not adequately represented by existing parties.") (quoting 5 A. Conte, Newberg on Class Actions § 16:7:30 (4th ed. 2002)).

Construing Plaintiffs' Motion as seeking intervention effectively matches the legal interest of the Equitable Claims Class members (efficient resolution of their claims as a class) with the parties it is construed as brought on behalf of (the presently unnamed Equitable Claims Class members). And so construing Plaintiffs' Motion does not markedly depart from established district court practice. *See, e.g.*, *Graham v. Thornburgh*, 207 F. Supp. 2d 1280, 1282–84 (D. Kan. 2002) (three-judge panel) (per curiam) (construing the Attorney General's "motion to amend the complaint as a motion to intervene by" individual voter-plaintiffs where the Attorney General arguably lacked standing to assert "the rights of particular citizens"); *Jones v. Dettelbach*, 2024 WL 4648057, at *2 (E.D. Mich) ("This motion was labeled as a motion to amend the complaint, but it is more properly construed as a motion to intervene under Fed. R. Civ. P. 24, because [a non-party] is asking to be added to the case.").

Thus, the Court will permit previously unnamed members of the Equitable Claims Class to join this action as named Plaintiffs by intervention, the procedural particulars of which are discussed *infra*.

16

Procedural Devices

Having determined Plaintiffs retain standing to bring the present Motion and are entitled as a general matter to the relief they seek, the Court turns to the analysis of whether the Federal Rules invoked permit granting Plaintiffs' Motion. The Court finds they do.

First, Plaintiffs invoke Federal Civil Rule 15's "liberal" standard for permitting amendment of the complaint whenever justice may so require. (Doc. 140, at 11–12); Fed. R. Civ. P. 15(a)(2). Defendants do not directly contest Plaintiffs' entitlement to amend their Complaint pursuant to the Rule 15 standard, choosing instead to center their arguments on whether Plaintiffs retain standing and whether Plaintiffs' claims "relate back" for statute of limitations purposes. *See, e.g.*, Doc. 146, at 27–33. In any event, however, the Court finds Plaintiffs meet Rule 15's standard for permitting amendment.

"The Court may deny leave to amend 'when it would result in undue delay, prejudice to the opposing party, or repeated failure to cure deficiencies in the complaint.'" *Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451, 468 (6th Cir. 2017) (quoting *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994)). Generally, the non-moving party must demonstrate, and this Court "must find[,] 'at least some significant showing of prejudice to the opponent.'" *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)). Though, the longer the movant delays in seeking leave to amend, "the less will be required of the nonmoving party in terms of showing prejudice." *Phelps*, 30 F.3d at 662 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). Here, Plaintiffs did not delay in bringing this Motion, as they raised the need to substitute new class representatives at a phone conference less than a month after the Court issued its certification order and complied with the briefing schedule set during such conference. This fact, combined with Defendants'

17

failure to offer substantive argument on prejudice, necessitates granting Plaintiffs' Motion to Amend pursuant to Federal Civil Rule 15.

Next, the Court finds the members of the Equitable Claims Class who seek to join this suit as class representatives are entitled to permissive intervention under Federal Civil Rule 24. *See* Fed. R. Civ. P. 24(b)(1) ("On timely motion, the court may permit anyone to intervene who (B) has a claim or defense that shares with the main action a common question of law or fact."). It is undisputed the members of the Equitable Claims Class who seek to join this suit meet the "common question" requirement of Federal Civi Rule 24(b)(1)(B), as their unjust enrichment and money had and received claims are functionally identical to those previously asserted by Plaintiff Mori. *Compare, e.g.*, Doc. 140-1, at 20 (describing claims retained by the Equitable Claims Class), *with* Doc. 18, at 24–25 (same). Further, intervention is timely in this instance because the parties seeking intervention, as discussed above, did not delay in bringing this motion as the unique circumstances necessitating intervention did not arise until after the Court issued its certification order. *See generally Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 758–59 (6th Cir. 2018) (outlining and applying the factors relevant to Federal Civil Rule 24's timeliness analysis).

Thus, the Court finds it proper under Federal Civil Rules to permit existing Plaintiffs to amend their Complaint and for the previously unnamed members of the Equitable Claims Class to intervene and join that Complaint.

Remaining Arguments

Defendants' remaining arguments in opposition do not demand a different result.

*Statutes of Limitations*

First, Defendants argue Plaintiffs' proposed Third Amended Complaint adding new parties as class representatives and removing dismissed claims would not "relate back" to the underlying

complaint pursuant to Federal Civil Rule 15(c). (Doc. 146, at 27–29, 32–34). On Defendants' account, Plaintiffs' OCSPA claims, which carry a two-year statute of limitations, accrued no later than the summer of 2020 when the season for which Plaintiffs purchased the passes did not occur in part or in its entirety. *Id.* at 32–33. Similarly, Defendants maintain a four-year statute of limitations applies to Plaintiffs' unjust enrichment and money had and received claims, which accrued at the same time as the OCSPA claims. *Id.* at 33–34. Thus, because Plaintiffs did not file the proposed amendment until May 2025, Defendants argue amendment to add additional claims or new parties with OCSPA or equitable claims would be barred unless such amendment "relates back" to the original Complaint pursuant to Rule 15(c). *Id.*; *see Zakora v. Chrisman*, 44 F.4th 452, 480–81 (6th Cir. 2022) (examining "whether the proposed amendment 'relates back' under Rule 15, which is necessary because the applicable statute of limitations for these claims has expired").

Whether a proposed amendment "relates back" to the original Complaint, however, is irrelevant if the statute of limitations has *not expired*. That is the case here, as the applicable statutes of limitations to Plaintiffs' claims (as well as those retained by the intervening parties) have been tolled while this case proceeded. "[T]he timely filing of a class action tolls the applicable statutes of limitations for all persons within the scope of the class alleged in the complaint." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020) (citing *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552–53 (1974)). This doctrine, referred to as *American Pipe* tolling, tolls the application of the statute of limitations for *all* members of a class, putative or certified, until the action ceases to be prosecuted on behalf of a class. *See, e.g.*, *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (6th Cir. 2011) ("The rationale of *American Pipe* does not permit a distinction among situations in which the putative class representative gives up before, or after, the judge decides whether the case may proceed on behalf of a class. Tolling lasts from the

19

day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad.").

Thus, because existing Plaintiffs and the intervening parties continue to proceed as a certified class with respect to their OCSPA and equitable claims, the statute of limitations remains tolled, amendment to add new parties with such claims is not time barred, and the proposed amendment need not "relate back" under Federal Civil Rule 15.

*Clear Legal Error*

Defendants further argue the Court's decision to certify classes and subclasses with representatives covered by the Court's definitional exclusions, as well as certifying certain subclasses that lacked a representative entirely, necessitates decertification. *See* Doc. 146, at 25–27. Where a party argues for decertification based on a mistaken application of the Federal Civil Rules governing class certification, as opposed to a change in the factual circumstances surrounding the case, such argument is evaluated as a request for reconsideration of the original certification decision.[4] *See Owner-Operator Ind. Drivers Ass'n v. Arctic Exp., Inc.*, 288 F. Supp. 2d 895, 899–900 (S.D. Ohio 2003) (treating a motion for decertification as seeking reconsideration where the defendant argued the district court "misinterpreted" applicable law such that "class certification was never proper"); *cf. Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of *subsequent developments* in the litigation.") (emphasis added).

---

4. Defendants did not bring an independent motion for decertification, choosing instead to present these arguments in opposition to Plaintiffs' Motion. *See* Doc. 146, at 25–27. Further, Defendants first presented this argument nearly a full calendar year after the Court issued its Order granting Plaintiffs' Motion for Certification.

20

Such a request for reconsideration may only be granted if the movant demonstrates: "(1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there is need to prevent manifest injustice or correct a clear error of law." 3 W. Rubenstein, Newberg on Class Actions § 7:35 (6th ed. 2022) (quoting *Panetta v. Sap Am., Inc.*, 2006 WL 2711747, at *2 (E.D. Pa.), *aff'd*, 294 F. App'x 715 (3rd Cir. 2008)); *see also GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). These three avenues serve as limited exceptions to the "law of the case" doctrine, which operates with particular strength in the class action context. *Cf. Torrent v. Yakult U.S.A., Inc.*, 2016 WL 6039188, at *1 (S.D. Cal.) ("When confronting renewed motions for class certification previously denied, 'courts uniformly apply the stringent law of the case standard to motions to reconsider initial class certification decisions.'") (quoting *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 438 (D.N.M. 2015)).

Here, Defendants cannot establish clear legal error. As discussed in *Sloan*, *Lynch*, *Birmingham Steel*, and even the Sixth Circuit's denial of Defendants' 26(f) appeal in this very case, certifying a class with a representative who is later determined to be outside the class definition, to possess a mooted claim, or to lack standing does not constitute clear legal error. Further, the Court's decision to *sua sponte* craft subclasses for the OCSPA Class and Equitable Claims Class without conducting an analysis of whether those subclasses retained adequate representation under Rule 23(a) is not clear legal error. The Court's certification order cited Rule 23(c) for the proposition that it retained "broad discretion to divide a class into sub-classes." (Doc. 117, at 2). However, under Rule 23(c), subclasses are "each treated as a class," meaning they must satisfy the Rule 23(a) prerequisites, including that they be adequately represented by a named class representative. *See* Fed. R. Civ. P. 23(c)(5). Thus, if the Court's certification order did, in fact, create subclasses pursuant to Rule 23(c), Defendants' clear legal error argument might have legs.

21

However, the Court's certification decision, despite ostensibly falling within the scope of Rule 23(c), is best understood as engaging in "management" subclassing pursuant to Rule 23(d). Subclassing under Rule 23(c) commonly occurs where some members of a broader class retain conflicting interests. "If two parts of a single class have significantly conflicting interests and cannot be adequately represented by a single representative or counsel, the class may be split into multiple subclasses *each with its own class representative and counsel,* and the litigation may proceed accordingly." 3 W. Rubenstein, Newberg on Class Actions § 7:31 (6th ed. 2022) (emphasis added) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997)). Subclassing under Rule 23(d), however, is done not to avoid conflict but "solely to expedite resolution of the case by segregating [a distinct legal] issue [that is] common to some members of the existing [class]." 3 W. Rubenstein, Newberg on Class Actions § 7:32 (6th ed. 2022) (alterations in original) (quoting *Casale v. Kelly*, 247 F.R.D. 396, 408 (S.D.N.Y. 2009)); *see also* Fed. R. Civ. P. 23(d) (providing a district court overseeing a class suit "may issue orders that determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument . . . [or] deal with similar procedural matters"). Where the Court creates such a "management" subclass pursuant to Rule 24(d), the subclass need not be treated "as a class" and therefore need not satisfy the typical certification requirements of Rule 23(a). *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 787 n.5 (9th Cir. 1982) ("Because the subclassification was appropriate under Rule 23(d), it is unnecessary to evaluate it under Rule 23(c)(4) for commonality, numerosity, typicality, and adequacy of representation.").

Here, the Court's certification order did not identify any conflict of interest between members of the various subclasses within either the OCSPA or Equitable Claims Classes. Rather, the subclassing is purely managerial, as it is focused exclusively on the different damages

calculations that may apply across class members depending on which tier of season pass they purchased. *See* Doc. 117, at 5–6 (describing the proper damages formula for "single-park" passholders compared to the damages "model for Platinum passholders"). Thus, the various subclasses delineated in the Court's certification order are best understood as "management" subclasses, negating application of Rule 23(a)'s representation prerequisites. Certifying such subclasses without representatives does not constitute clear legal error.

Equitable Claims Class Definition

Finally, Plaintiffs move the Court to "modify the Equitable Claims Class definition to include passholders who purchased their passes in-person at the relevant parks." (Doc. 140, at 13). While this Court may exercise its discretion to modify class definitions "as appropriate *in response to developments* in the litigation," *Eaton v. Ascent Resources-Utica, LLC*, 2024 WL 1458457, at *5 (S.D. Ohio) (emphasis added), there are no such qualifying changes in this litigation. No facts discovered or circumstances changed can justify this expansion of the Equitable Claims Class, nor do Plaintiffs attempt to identify any. Nor is this a circumstance in which, absent modification, the class is likely to fail a Rule 23(a) or (b)(3) prerequisite, in which case a more relaxed, discretionary standard might apply to Plaintiffs' request. *See, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 459 (N.D. Ohio 2014) (explaining "if possible, modification of the class definition, or use of subclasses, is generally preferred" when compared to decertification for failure to meet Rule 23(a) and (b)(3) certification requirements); *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 235 F. Supp. 3d 882, 891 (S.D. Ohio 2017) (granting leave to amend the complaint to include a narrower class definition where the prior definition would pose a bar to certification).

Rather, much like Defendants' request to decertify the OCSPA and Equitable Claims Classes, Plaintiffs' request to expand the latter functions as a motion for reconsideration of the initial certification decision. However, Plaintiffs do not identify any change in the applicable law, new evidence, or clear legal error justifying reconsideration. *See Panetta*, 2006 WL 2711747, at *2. Perhaps Plaintiffs are correct to assert there is no proper reason "to exclude in-person purchasers from the Equitable Claims Class." (Doc. 148, at 22). Even if so, however, they fail to identify a qualifying justification for reconsidering the initial certification decision, including the crafting of a class definition.

Thus, the Court denies Plaintiffs' Motion insofar as it seeks a reconsideration of the Court's prior definition of the scope of the Equitable Claims Class.

Summary

The Court finds Plaintiffs entitled to the relief they seek with respect to the substitution of class representatives and the addition of new parties to this action. To that effect, their Motion is granted in part, and Plaintiffs are hereby directed to file their proposed amended complaint (Doc. 140-1), as their Third Amended Complaint. To assuage any jurisdictional concerns, the Court construes Plaintiffs' Motion as seeking intervention on behalf of the previously unnamed members of the Equitable Claims Class, including Jessica Hunt, Tracy Miller, Chante Hammond, and Richard Davis. *See* Doc. 140-1, at 3–4, 19. These parties are granted leave to intervene and join in Plaintiffs' Third Amended Complaint once filed.

Finally, Defendants had the opportunity to conduct depositions with respect to the new named Plaintiffs and do not contest the qualifications of the substituted representatives for the OCSPA and Equitable Claims Classes under Rule 23(a). Considering the absence of a real dispute, combined with the shared nature of the claims retained by the new putative representatives and

those excluded by the court's class definitions, the Court finds it proper to certify Jessica Hunt, Tracy Miller, Chante Hammond, Richard Davis, Eric Contreras, and Isaac Conard as class representatives for the OCSPA Class. Because the subclasses crafted in the Court's certification order are mere management subclasses, the Court need not certify representatives for each subclass. Similarly, Jessica Hunt, Tracy Miller, Chante Hammond, and Richard Davis are hereby certified as class representatives for the Equitable Claims Class. Again, no representatives need be certified for the management subclasses contained therein. The facts giving rise to these individuals' claims are virtually identical to those of the named Plaintiffs previously put forth as putative reps, but for their use of their 2020 passes in 2021. Thus, the Court's prior determination with respect to commonality, typicality, numerosity, adequacy of representation, predominance, and superiority governs as "the law of the case." *See Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021).

As set forth herein, the new named Plaintiffs will be substituted as class representatives for the OCSPA and Equitable Claims Classes, and the Court's certification order (Doc. 117) is hereby modified to reflect such changes.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiffs' Motion to Add Class Representatives, Amend the Complaint, and Modify the Court's Class Certification Order (Doc. 140) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART as set forth herein.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: March 27, 2026

25